## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **LYNDON SOUTHERN INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:24-cv-7730** |
| | ) | |
| **BEDFORD TRANSPORTATION, LLC,** and | ) | **Judge** |
| **UNIFIED CML, LLC, BIONKA LEWIS,** | ) | |
| **JONATHAN TULLIS, EQUARION GILLS,** | ) | |
| **DIANE JOHNSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiff, Lyndon Southern Insurance Company for its Complaint against Bedford Transportation LLC ("Bedford") and Unified CLM LLC ("Unified") states as follows.

### PARTIES

1.      Bedford Transportation LLC is an Illinois limited liability company and is a freight shipping trucking company in the business of providing transportation services.

2.      All of Bedford Transportation LLC's members are either citizens of Illinois or citizens of Indiana. Bedford Transportation, LLC's individual Illinois citizens are: Abdul Kadar Sodagar; Akbar Mithani; Akhtar Ramzanali; Amin Habib; Anita Shah; Bharat Patel; Chandra Shah; Dharmesh K. Rangwal; Jaffer Khowaja; Krishna Patel; Murad Husain; Nasser Meherally; Noorul Khowaja; Prakash Patel; Pravina Patel; Purushottam Patel; Pyarali Merchant; Rishad Rajabali; Sam Savani; Sanjay Patel; Tarulata Patel; and Vrajlal Savsani. Bedford Transportation, LLC's members include the following corporations, each of which is organized under Illinois law and each has its principal place of business in Illinois: 3 RD Inc.; Bhallas, Inc.; Jamar Group CML Inc; NASA, Inc.; NRN Network Inc; Pramukh Seva, Inc; and Stylika, Inc. Bedford Transportation, LLC's members include the following Illinois limited liability companies whose members are

Illinois citizens: CML Gold Properties, LLC, whose sole member is Siraj Virani, a citizen of Illinois; DIYA CML, LLC, whose sole member is Sanjeev Khatau, a citizen of Illinois; Jubilee Investments, LLC, whose sole member is Rahim Merchant, a citizen of Illinois; Kardo Investment LLC, whose sole member is Kardo Rasha, a citizen of Illinois; Midwest CML LLC, whose sole member is Thomas Mammen, a citizen of Illinois; Niles Donut, LLC, whose sole member is Abdul Panjwani, a citizen of Illinois; and Sevabrands LLC CML Real Estate, whose sole member is Parag Patel, a citizen of Illinois. Finally, Krisna, Inc is a member of Bedford Transportation, LLC, and it is a corporation organized under Indiana law and has its principal place of business in Indiana.

3.    Unified CML LLC is an Illinois limited liability company and is in the business of manufacturing donuts.

4.    All of Unified CML LLC's members are either citizens of Illinois or citizens of Indiana. Unified CML, LLC's individual Illinois citizens are: Abdul Kadar Sodagar; Akbar Mithani; Akhtar Ramzanali; Amin Habib; Anita Shah; Bharat Patel; Chandra Shah; Dharmesh K. Rangwal; Jaffer Khowaja; Krishna Patel; Murad Husain; Nasser Meherally; Noorul Khowaja; Prakash Patel; Pravina Patel; Purushottam Patel; Pyarali Merchant; Rishad Rajabali; Sam Savani; Sanjay Patel; Tarulata Patel; and Vrajlal Savsani.

5.    Unified CML, LLC's members include the following corporations, each of which is organized under Illinois law and each has its principal place of business in Illinois: 3 RD Inc.; Bhallas, Inc.; Jamar Group CML Inc; NASA, Inc.; NRN Network Inc; Pramukh Seva, Inc; and Stylika, Inc. Unified CML, LLC's members include the following Illinois limited liability companies whose members are Illinois citizens: CML Gold Properties, LLC, whose sole member is Siraj Virani, a citizen of Illinois; DIYA CML, LLC, whose sole member is Sanjeev Khatau, a citizen of Illinois; Jubilee Investments, LLC, whose sole member is Rahim Merchant, a citizen of

Illinois; Kardo Investment LLC, whose sole member is Kardo Rasha, a citizen of Illinois; Midwest CML LLC, whose sole member is Thomas Mammen, a citizen of Illinois; Niles Donut, LLC, whose sole member is Abdul Panjwani, a citizen of Illinois; and Sevabrands LLC CML Real Estate, whose sole member is Parag Patel, a citizen of Illinois. Finally, Krisna, Inc is a member of Unified CML, LLC, and it is a corporation organized under Indiana law and has its principal place of business in Indiana.

6.      Upon information and belief, Bedford provides labor for Unified's donut manufacturing facility.

7.      Bionka Lewis is an Illinois citizen and natural person. Bionka Lewis is named herein only as a nominal defendant because she filed a lawsuit against Bedford alleging violations of the BIPA. No relief is sought against Bionka Lewis.

8.      Jonathan Tullis is an Illinois citizen and natural person.  Jonathan Tullis is named herein only as a nominal defendant because he filed a lawsuit against Bedford alleging violations of the BIPA. No relief is sought against Jonathan Tullis.

9.      Equarion Gills is an Illinois citizen and natural person.  Equarion Gills is named herein only as a nominal defendant because he filed a lawsuit against Bedford alleging violations of the BIPA. No relief is sought against Equarion Gills.

10.      Diane Johnson is an Illinois citizen and natural person.  Diane Johnson is named herein only as a nominal defendant because she filed a lawsuit against Unified alleging violations of the BIPA. No relief is sought against Diane Johnson .

11.      Lyndon Southern Insurance Company ("Fortegra") is a Delaware corporation with its principal place of business in Florida.  At all relevant times, Fortegra was engaged in the sale of insurance products and issued and delivered insurance contracts in the State of Illinois.

3

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because none of the defendants are citizens of the same states as Fortegra and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.      This Court is vested with the power to declare the rights and liabilities of the parties hereto pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201(a), provides that "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

11.      Venue is appropriate in this matter because a substantial part of the events giving rise to this complaint occurred here, including the issuance and delivery of the insurance contract to be rescinded.

## FACTUAL BACKGROUND

### A.      Bedford's and Unified's BIPA Compliance

12.      In 2008, the Illinois General Assembly enacted the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA").

13.      BIPA establishes standards for how private entities operating in Illinois must handle an individual's biometric identifiers and biometric information. *See* 740 ILCS 14/15.

14.      Upon information and belief, Bedford and Unified have been using a biometric fingerprint scanner as a time clock for employees clocking in and out of work since 2014.

15.     It has been alleged by several prior employees of Bedford and/or Unified that, starting as early as 2014, Bedford and Unified captured and stored Illinois employees' biometric data through the use of a biometric fingerprint scanner without complying with the provisions of the BIPA.

**B.     Bedford's and Unified's BIPA Compliance Plan**

16.     Upon information and belief, in and around May of 2019, neither Bedford nor Unified had a BIPA policy in place.

17.     Upon information and belief, in May of 2019, Bedford and Unified developed a privacy policy for its use of biometric fingerprint scanners.

18.     Upon information and belief, in and around May of 2019, Bedford and Unified implemented a BIPA privacy policy in compliance with the BIPA.

19.     Upon information and belief, prior to May of 2019, neither Bedford nor Unified had a BIPA-complaint policy.

**C.     Bedford's and Unified's Application to Fortegra and Issuance of the Policy**

20.     On January 15, 2021, Bedford and Unified applied for an employment practices liability insurance policy with Fortegra ("the Fortegra Application"). *See*, Exhibit A, Fortegra Application.

21.     To this end, and to allow it to properly evaluate the risk it was underwriting, the Fortegra Application specifically asked whether Bedford and Unified had procedures in place to deal with biometric privacy laws.  Ex A. at P.2.

22.     To allow it to properly assess the risk it was potentially underwriting, Fortegra also specifically asked in the Fortegra Application whether Bedford or Unified were aware of any fact,

circumstance, or situation which may result in an employment claim against either Bedford or Unified. Ex. A. at P.2.

23. Bedford and Unified answered "No" to this question on the Fortegra Application. Ex. A. at P.2.

24. Relying on the information contained in the Fortegra Application, Fortegra issued an employment-related practices liability policy to Bedford and Unified under policy number FOR-2000320-00 for the policy period of February 15, 2021 through February 15, 2022 ("the Policy"). *See*, Exhibit B, the Policy.

25. Contrary to the representations in the Fortegra Application, Bedford and Unified had implemented a BIPA privacy policy only nineteen months earlier, and as such, were aware of a fact, circumstance, or situation which may result in an employment claim against them.

26. Bedford's and Unified's omissions and misrepresentations in the Fortegra Application were material to the issuance of the Policy.

27. Bedford's and Unified's omissions and misrepresentations regarding the potential BIPA claims and liability thereunder materially affect the risk assumed under the Policy.

**D. BIPA Claims Against Bedford and Unified**

28. On or about July 8, 2021, Unified received a letter from an attorney representing Bionka Lewis, a former employee, requesting her personnel file and employment records.

29. On July 22, 2021, through its outside counsel Fisher Phillips, Unified responded by denying the request on the basis that the Illinois Personnel Record Review Act only permits employees to obtain personnel and employment records if they were employed within the preceding year.

30. Upon information and belief, Lewis alleges that her employment file did not contain a BIPA-compliant informed consent disclosure.

31. Unified reported Lewis's July 8, 2021 request for records to Fortegra as a potential claim under the Policy.

32. On September 8, 2021, Lewis demanded $183,000 in damages from Unified for violations of BIPA.

33. Lewis's counsel also indicated his intention to file a class action against Unified due to Unified's failure to implement a biometric policy in compliance with BIPA during the period of Lewis's employment between 2018 and 2019.

34. On December 8, 2021, Bionka Lewis, individually and on behalf of all others similarly situated, filed a lawsuit captioned *Bionka Lewis et al v. Unified CML, LLC*, Case No. 2021 CH 6125 in the Circuit Court of Cook County ("the Lewis Complaint").

35. The Lewis Complaint alleges that Unified required its employees to scan biometric identifiers as an authorization method to track time worked and that employee data was then retained in Unified's databases and used as a means of authentication.

36. The Lewis Complaint alleges that Unified disregarded individuals' statutorily protected privacy rights and unlawfully collected, stored, and used their biometric data in violation of the BIPA.

37. Thereafter, on February 25, 2022, Keith Blunt and Equarion Gills, individually and on behalf of all others similarly situated, filed a lawsuit captioned *Keith Blunt et al v. G2k Logistics, LLC and Bedford Transportation, LLC*, case number 2022-CH-1637 in the Circuit Court of Cook County. A First Amended Complaint was filed on May 19, 2022 substituting Jonathan Tullis for Keith Blunt ("the Tullis Complaint").

38.    The Tullis Complaint alleges that the plaintiffs, in relevant part, worked for Bedford between 2016 and 2020.

39.    Similar to the Lewis Complaint, the Tullis Complaint alleges that Bedford required its employees to scan fingerprint data as an authorization method to track time worked.

40.    The Tullis Complaint further alleges that Bedford disregarded its employees statutorily protected privacy rights and unlawfully collected, stored, disseminated, and used plaintiffs' and other similarly-situated workers' biometric data in violation of BIPA.

41.    On March 27, 2023, counsel for Jason Lamar Schaffer sent a letter to Unified enclosing a draft complaint in an action that would be entitled *Jason Lamar Schaffer v. Unified CML, LLC*, for Cook County, Illinois Circuit Court (the "Lamar Claim"), also alleging BIPA violations concerning the fingerprint data that Unified collected from its employees, and seeking damages.

42.    Thereafter, on August 25, 2023, Diane Johnson, individually and on behalf of all others similarly situated, filed a lawsuit captioned *Diane Johnson v. Unified CML, LLC and Unified CML Operations, LLC*, Case No. 2023-CH-07732 in the Circuit Court of Cook County (the "Johnson Complaint"). The Johnson Complaint alleges that the plaintiffs, in relevant part, worked for Unified between 2014 and 2019.

43.    Similar to the Lewis Complaint, the Tullis Complaint and the Schaffer Claim, the Johnson Complaint alleges that Unified required its employees to scan fingerprint data as an authorization method to track time worked.

44.    The Johnson Complaint further alleges that Unified disregarded its employees statutorily protected privacy rights and unlawfully collected, stored, disseminated, and used plaintiffs' and other similarly-situated workers' biometric data in violation of BIPA.

**E.      Bedford and Unified Tendering of Claims to Fortegra and Fortegra Response**

45.      Bedford and Unified tendered the Lewis Complaint, the Tullis Complaint, the Lamar Claim and the Johnson Complaint to Fortegra for defense and indemnity under the Policy.

46.      Fortegra undertook Bedford's and Unified's defense pursuant to reservation of rights letters issued on September 13, 2021 and June 28, 2021.

47.      In or around December of 2022, Fortegra learned that Bedford and Unified drafted its first BIPA Policy nineteen months before completing the Fortegra Application and prior to inception of the Policy, and that Bedford and Unified should have known that its lack of a BIPA privacy policy prior to May of 2019 could subject it to legal liability and claims.

48.      On February 9, 2023, Fortegra issued a second supplemental reservation of rights letter reserving its rights to rescind the Policy based on Bedford's and Unified's intentional and material misrepresentation in the Fortegra Application.

49.      On February 9, 2023, Fortegra issued a second supplemental reservation of rights letter reserving its rights to deny coverage based on known circumstance that Bedford and Unified could reasonably foresee could result in a BIPA claim.

50.      On May 25, 2023, Fortegra issued a third supplemental reservation of rights letter continuing to reserve its rights to rescind the Policy or deny coverage based on Bedford's and Unified's intentional and material misrepresentation in the Fortegra Application.

51.      On September 27, 2023, Fortegra issued a fourth supplemental reservation of rights letter continuing to reserve its rights to rescind the Policy or deny based on Bedford's and Unified's intentional and material misrepresentation in the Fortegra Application.

## THE POLICY

52**.**     Section I. of the Policy, entitled **Insuring Agreement**, and the preamble to

same, provide, in relevant part as follows.

> In consideration of the payment of the premium and in reliance upon the statements contained in the "**Application**" and the materials submitted in connection therewith, **we** agree to this Policy as a contract with **you**.

<div align="center">***</div>

### SECTION I. INSURING AGREEMENT— WHAT IS COVERED

**A.**     **We shall pay those amounts the "Insured" is legally required to pay as "Loss" by reason of a "Claim" alleging a "Wrongful Act" to which this insurance applies if the "Claim" for a "Wrongful Act" is first made against you and reported to us during the "Policy Period" or any extended reporting period we agree to provide under this Policy.**

Ex. B at Form LSIC-001 01/19, P.1.

54.     Section II of the Policy contains a number of exclusions, including a prior

knowledge and claim exclusion as follows.

### SECTION II. EXCLUSIONS—WHAT IS NOT COVERED

<div align="center">***</div>

I.     **Prior Knowledge & Claim**. Any **"Claim"** arising out of incidents or circumstances of which any **"Insured"** had knowledge of and which any **"Insured"** could reasonably foresee might result in a **"Claim"**, or any asserted or pending **"Claim"**, prior to the Policy effective date shown in the Declarations;

Ex. B at Form LSIC-001 01/19, P.3.

55.     The Policy also contains the following Condition:

L.     Representations and Covenants. The **"Insured(s)"** represent the statements in the "Application" are true, accurate, and complete. The **"Insured(s)"** further acknowledge(s) that this Policy is issued by the Company in reliance upon such statement.

Ex. B.

## COUNT I – RESCISSION

56.     Fortegra repeats and incorporates by reference the allegations contained in paragraphs one through 59 as if fully set forth herein.

57.     Prior to executing the Fortegra Application, Bedford and Unified faced potential BIPA claims for its failure to have a BIPA-complaint policy in place prior to March of 2020.

58.     Despite this fact, Bedford and Unified mispresented to Fortegra in the Fortegra Application that it was unaware of any fact, circumstance, or situation which may result in an employment claim against either Bedford or Unified.

59.     Bedford and Unified misrepresentation and/or concealment of these facts was material to the formation of the Policy and inducing Fortegra to enter into the Policy and provide insurance coverage to Bedford and Unified for future BIPA claims.

60.     Fortegra agreed to the terms of the Policy based on Bedford's and Unified's misrepresentations and/or concealment of there being no fact, circumstance, or situation of which Bedford or Unified was aware that could result in an employment related claim against either Bedford or Unified.

61.     Fortegra would not have agreed to underwrite the Policy, or underwrite it on the same terms and conditions, had it known of the facts that Bedford and Unified materially misrepresented and/or concealed.

62.     As a result of entering into the Policy based on Bedford's and Unified's material misrepresentations and/or concealments, Fortegra has incurred significant money damages, including but not limited to attorney's fees and costs.

63.     Upon the issuance of an Order rescinding the Policy, Fortegra will return all premiums Bedford and Unified paid for the Policy.

Wherefore, Fortegra respectfully requests that this Court enter judgment in its favor and against Bedford and Unified finding that the Policy is rescinded and restoring the parties to the relevant status quo immediately prior to issuance of the Policy, including a money judgment in excess of $75,000 equivalent to the defense costs and fees incurred by Fortegra as a result of the Policy and for any other relief that this Court deems appropriate.

## COUNT II – DECLARATORY JUDGMENT
### (Prior Knowledge & Claim Exclusion)

64.     Fortegra repeats and incorporates by reference the allegations contained in paragraphs one through 66 as if fully set forth herein.

65.     Prior to the inception of the Policy, Bedford and Unified knew it faced potential BIPA claims for its failure to have a BIPA-complaint policy in place prior to May of 2019.

66.     Prior to the inception of the Policy, Bedford and Unified could reasonably foresee that it faced potential BIPA claims for its failure to have a BIPA-complaint policy in place prior to May of 2019.

67.     The Policy excludes coverage any claim arising out of incidents or circumstances of which Bedford or Unified had knowledge of and which either Bedford or Unified could reasonably foresee might result in a claim prior to February 15, 2021.

68.     As a result, Fortegra has no duty to defend or indemnify Bedford or Unified for the allegations in the Lewis Complaint, the Tullis Complaint, the Lamar Claim or the Johnson Complaint.

WHEREFORE, based on the foregoing, Fortegra requests entry of a declaratory judgment declaring that Lyndon Southern Insurance Company has no duty to defend or indemnify Bedford or Unified under the Policy for the claims arising out of the Lewis Complaint, the Tullis Complaint,

the Lamar Claim or the Johnson Complaint, and for any further relief that this Court deems just, including fees and costs.

## COUNT III – DECLARATORY JUDGMENT
### (Breach of Representations and Covenants Condition)

69.     Fortegra repeats and incorporates by reference the allegations contained in paragraphs one through 71 as if fully set forth herein.

70.     The Representations and Covenants condition in the Policy provides that a condition to coverage is that the statements in the "Application" are true, accurate, and complete.

71.     Conditions in an insurance policy are conditions precedent to coverage.

72.     Bedford and Unified breached the Representations and Covenants condition in the Policy by failing to provide true, accurate, and complete statements in the Fortegra Application.

73.     Specifically, Bedford and Unified failed to disclose the existence of facts or circumstances that could result in liability under BIPA.

74.     Because Bedford and Unified breached a condition in the Policy, and conditions are conditions precedent to coverage, no coverage is afforded for the underlying lawsuits.

WHEREFORE, based on the foregoing, Fortegra requests entry of a declaratory judgment declaring that Lyndon Southern Insurance Company has no duty to defend or indemnify Bedford or Unified under the Policy for the claims arising out of the Lewis Complaint, the Tullis Complaint, the Lamar Claim or the Johnson Complaint, and for any further relief that this Court deems just, including fees and costs

Dated:  August 27, 2024.

<div style="margin-left: 40%;">

Respectfully submitted,

Lyndon Southern Insurance Company

By:      */s/ Katherine A. Jones*

Kevin O'Hagan (ARDC # 6211446)
Katherine A. Jones (ARDC # 6276571)
O'HAGAN MEYER, LLC
One E. Wacker Dr., Suite 3400
Chicago, Illinois 60601
PH:  312.422.6100
kohagan@ohaganmeyer.com
kjones@ohaganmeyer.com

</div>

EXHIBIT
**A**

# LYNDON SOUTHERN INSURANCE COMPANY



**EMPLOYMENT PRACTICES LIABILITY INSURANCE APPLICATION**

Return All Applications to:
**Rockwood Programs Inc.**
3001 Philadelphia Pike
Claymont, DE 19703-2580
Tel: 800-558-8808 • Fax: 302-764-5477
www.rockwoodinsurance.com

| THIS APPLICATION IS FOR A CLAIMS-MADE POLICY. PLEASE READ YOUR POLICY CAREFULLY |

Applicant may qualify for a QUICK QUOTE by completing Section I below. Sections II, III, IV, & V answers will be required prior to binding and are subject to underwriting approval. QUICK QUOTE is not available for accounts with losses in the past 5 years. If there is a loss history, please complete the entire application and submit details in a Claim Supplement.    Effective Date   2/15/21

## I GENERAL INFORMATION

A. Applicant/Named Insured  Bedford Transportation LLC / Unified CML LLC

B. Physical Address  5353 W. 73rd Street          (☑ Same as mailing address)
    (P.O. Box is not an applicable address)

   City  Bedford Park        State  IL   Zip  60455   County  COOK

C. Web Address    N/A

D. Primary Contact: Email Address  Thomas.malnoha@unifiedcml.com   Phone (847) 507-0789.

E. Description of Operations    Bakery, Cooking Dunkin brand,
    products.

F. Business is: ○ Corporation  ○ Individual Proprietor  ○ Partnership  ☑ LLC  ○ Other (specify) _____

G. Full time Employees  150   Part Time  100   Temporary/ Seasonal  0   Leased  0   Independent Contractors  0   Volunteer/ Interns  0

H. What percentage of employees belong to a Union . . . . . . . . . . .  0  %

I. List below the Number of Employees in Top 3 States by State:        Employees Outside the U.S. _____

   1. State  IL  Number of Employees  250   2. State  0   Number of Employees  0   3. State  0   Number of Employees  0

J. Number of Locations: Within U.S. . . . . . 1 . . . _____       Outside the U.S. . . . . . . . . . .  0

## II UNDERWRITING INFORMATION

A. Year Established . . 2019 . . . . . . _____     Number of years under current management . . . .  8 .

B. Do more than 50% of all employees currently earn more than $100,000? . . . . . . . . . . . . . . . . . . ○ Yes  ☑ No

   1. Is the Applicant a Subsidiary of another organization? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ○ Yes  ☑ No

   2. Is the Applicant a franchisee of another organization? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ○ Yes  ☑ No

   3. Name of Parent and/or Franchisor and Location: _____

   4. Does the Applicant want any Subsidiary(s) covered? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ○ Yes  ☑ No
      If "Yes," include employees in employee count above and provide:

      a) Name of Subsidiary(s)    0

      b) Is the Subsidiary(s) at least 50% owned by the Applicant? . . . . . . . . . . . . . . . . . . . . . . . . . ○ Yes  ☑ No.

      c) Does the Subsidiary(s) fall within the same class of business as the Applicant? . . . . . . . . . . . . . . ○ Yes  ☑ No

   5. Expiring Policy

| Retroactive Date 2/15/200 | Limits $ 1ML | Retention $ 10,000 | Premium $ 12K. |
|---|---|---|---|
| Expiration Date 2/15/21 | Carrier: Travelers | | |

## III  HUMAN RESOURCES

A.  Written Guideline Requirements:

1.  Does each entity proposed for Insurance have a written Email/Internet Policy currently in place or is willing to implement one?.................................................................... ☒ Yes ○ No

2.  Does each entity proposed for insurance have a written Anti-Discrimination and Anti-Harassment Policy? ...................................................................................... ☒ Yes ○ No

3.  Does the company have an employee grievance reporting and resolution process? ............ ☒ Yes ○ No

4.  Does the company have a HR Coordinator? ................................................... ☒ Yes ○ No

If "No", describe how HR functions are administered. _____

_____

5.  Do all employees receive training in the proper implementation of your human resources policies and procedures?............................................................................... ☒ Yes ○ No

*If "Yes," please provide a description and number of hours each employees is required to take.*

_____

6.  Do you have a written policy with respects to progressive discipline for Employees. ............ ☒ Yes ○ No

7.  If you have a public website, does it comply with the Web Content Accessibility Guidelines ........ ☒ Yes ○ No
    (WCAG) 2.0?

8.  Do you have procedures in place to deal with biometric privacy laws? ......................... ☒ Yes ○ No
    NY Applicants Only: Is your organization in compliance with the Gender Expression ............ ○ Yes ○ No
    Non-Discrimination Act?

9.  Is any Family and Medical Leave (FMLA) provided gender-neutral?............................ ☒ Yes ○ No

## IV  BUSINESS PRACTICES

A.  1.  Has any entity proposed for insurance closed, sold, merged-with or acquired any company in the past 12 months or anticipate doing so in the next 12 months?................................ ○ Yes ☒ No

2.  Has any entity proposed for insurance downsized, laid off, or reduced staff in the past 12 months or anticipate doing so in the next 12 months?.................................................. ○ Yes ☒ No
    *If "Yes," please complete the following three questions.*
    a)  What percentage of the workforce was/will be affected? ................................. _____ %
    b)  How and why were the individuals selected? Provide details on separate sheet of paper.
    c)  What will be offered? (Check all that apply):
    ○ Re-location arrangements   ○ Re-training   ○ Severance package   ○ Out-placement

B.  Has any Policy for Employment Practices Liability Insurance ever been canceled or non-renewed by the carrier? .............................................................................. ○ Yes ☒ No

C.  Do you own any other entities? .............................................................. ○ Yes ☒ No
    If "Yes", please provide details on Supplemental Application.

## V  CLAIMS HISTORY

A.  Within the last 5 years, has any employment related, or third party discrimination, or third party harassment inquiry, complaint, notice of hearing, claim, or suit been made against any entity proposed for insurance or any person proposed for Insurance in the capacity of either Director, Officer, Member (if an LLC), or Employee of any entity proposed for insurance. ....... ○ Yes ☒ No *If "Yes," complete Claim Supplemental for each claim.*

B.  Is any person proposed for this Insurance aware of any fact, circumstance, or situation which may result in an employment claim, or third party discrimination, or third party harassment claim against any entity proposed for Insurance or any of its Directors, Officers, Members (if LLC), or Employees? .......... ○ Yes ☒ No
    *If "Yes," complete Claim Supplemental for each claim.*

## VI OPTIONAL COVERAGES

A. Are you looking for Wage and Hour coverage?............................................. ☒ Yes ○ No
   *If "Yes", please complete Wage and Hour supplemental application.*
B. Are you looking for Third Party coverage?................................................ ☒ Yes ○ No
C. Are you looking for Defense Outside the Limits of Liability Coverage? ...................... ☒ Yes ○ No

## VII ADDITIONAL APPLICANT INFORMATION

Applicant's
Mailing Address _____

City _____ State _____ Zip _____

# FRAUD STATEMENTS

**Arizona Notice:** Misrepresentations, omissions, concealment of facts and incorrect statements shall prevent recovery under the policy only if the misrepresentations, omissions, concealment of facts or incorrect statements are; fraudulent or material either to the acceptance of the risk, or to the hazard assumed by the insurer on the insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy otherwise.

**Colorado Fraud Statement:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of Colorado division of insurance within the department of regulatory agencies.

**District of Columbia Fraud Statement:** WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida Fraud Statement:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Florida Notice:** (Applies only if policy is non-admitted) you are agreeing to place coverage in the surplus lines market. Superior coverage may be available in the admitted market and at a lesser cost. Persons insured by surplus lines carriers are not protected under the Florida Insurance Guaranty Act with respect to any right of recovery for the obligated of an insolvent unlicensed insurer.

**Florida and Illinois Punitive Damages Notice:** I understand that there is no coverage for punitive damages assessed directly against an insured under Florida and Illinois law. However, I also understand that punitive damages that are not assessed directly against an insured, also known as "vicariously assessed punitive damages", are insurable under Florida and Illinois law. Therefore, if any Policy is issued to the Applicant as a result of this Application and such Policy provides coverage for punitive damages, I understand and acknowledge that the coverage for Claims brought in the State of Florida and Illinois is limited to "vicariously assessed punitive damages" and that there is no coverage for directly assessed punitive damages.

**Kansas Fraud Statement:** Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows

to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto may be guilty of a crime and may be subject to fines and confinement in prison.

**Kentucky Fraud Statement:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine Fraud Statement:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits. A binder may not be withdrawn but a prospective notice of cancellation may be sent and coverage denied for fraud or material misrepresentation in obtaining coverage. A policy may not be unilaterally rescinded or voided.

**Maine and Washington Fraud Statement:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or denial of insurance benefits. A binder may not be withdrawn but a prospective notice of cancellation may be sent and coverage denied for fraud or material misrepresentation in obtaining coverage. A policy may not be unilaterally rescinded or voided.

**Maryland Fraud Statement:** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota Notice:** Authorization or agreement to bind the insurance may be withdrawn or modified only based on changes to the information contained in this application prior to the effective date of the insurance applied for that may render inaccurate, untrue or incomplete any statement made with a minimum of 10 days notice given to the insured prior to the effective date of cancellation when the contract has been in effect for less than 90 days or is being canceled for nonpayment of premium.

**New Jersey Fraud Statement:** Any person who included any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**New York Disclosure Notice:** This policy is written on a claims made basis and shall provide no coverage for claims arising out of incidents, occurrences or alleged Wrongful Acts or Wrongful Employment Acts that took place prior to retroactive date, if any, stated on the declarations. This policy shall cover only those claims made against an insured while the policy remains in effect for incidents reported during the Policy Period or any subsequent renewal of this Policy or any extended reporting period and all coverage under the policy ceases upon termination of the policy except for the automatic extended reporting period coverage unless the insured purchases additional extended reporting period coverage. The policy includes an automatic 60 day extended claims reporting period following the

## FRAUD STATEMENTS Continued ...

termination of this policy. The Insured may purchase for an additional extended reporting period of 12 months, 24 months or 36 months following the termination of this policy. Potential coverage gaps may arise upon the expiration for this extended reporting period. During the first several years of a claims-made relationship, claims-made rates are comparatively lower than occurrence rates. The insured can expect substantial annual premium increases independent overall rate increases until the claims-made relationship has matured.

**North Dakota Fraud Statement:** Notice to North Dakota applicants-Any person who knowingly and with the intent to defraud an insurance company or other person, files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty.

**Ohio Fraud Statement:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. Ohio Representation Statement: By acceptance of this policy, the Insured agrees the statements in the application (new or renewal) submitted to the company are true and correct. It is understood and agreed that the statements made in the insurance application are incorporated into, and shall form part of, this policy.

**Oklahoma Fraud Statement:** WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of felony.

Oregon Fraud State: Notice to Oregon applicants: Any person who, with intent to defraud or knowing that he is facilitation a fraud again an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

**Pennsylvania Fraud Statement:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Tennessee Fraud Statement:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Utah Notice:** I understand that Punitive Damages are not insurable in the state of Utah. There will be no coverage afforded for Punitive Damages for any Claim brought in the State of Utah. Any coverage for Punitive Damages will only apply if a Claim is filed in a state which allows punitive or exemplary damages to be insurable. This may apply if a Claim is brought in another state by a subsidiary or additional location(s) of the Named Insured, outside the state of Utah, for which coverage is sought under the same policy.

**Utah Fraud Statement:** Any person, who with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Vermont Fraud Statement:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance may be subject to fines and confinement in prison.

**Virginia Notice:** This Policy is written on a claims-made basis. Please read the policy carefully to understand your coverage. You have an option to purchase a separate limit of liability for the extended reporting period. If you do not elect this option, the limit of liability for the extended reporting period shall be part of the and not in addition to limit specified in the declarations. If you have any questions regarding the cost of an extended reporting period, please contact your insurance company or your insurance agent. Statements in the supplication shall be deemed the insured's representations. A statement made in the application or in any affidavit made before or after a loss under the policy will not be deemed material or invalidates coverage unless it is clearly proven that such statement was material to the risk when assumed and was untrue.

**Virginia Fraud Statement:** Any person who knowingly and with intent to defraud an insurer, submits an Application for insurance or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Washington Fraud Statement:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

Fraud Statement (All Other States): Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Missouri & Rhode Island Disclosure Notice:** I understand and acknowledge that if a $100,000 or $250,000 Limit of Liability is chosen or if the Insured's Organization has more than 200 employees, that Defense Costs are a part of the Limit of Liability. This means that Defense Costs will reduce my limits of insurance and may exhaust them completely and should that occur, I shall be liable for any further legal Defense Costs and Damages. Defense Costs is as defined in Section III.

I also understand that the Limit of Liability for the Extended Reporting Period, if applicable, shall be a part of and not in addition to the limit specified in the Policy Declarations.

If your state requires that we have information regarding you Authorized Retail Agent or Broker, please provide below.

| | |
|---|---|
| Retail agency name _Insurance World Agency Inc_ | License No. _100300519_ |
| Agent's signature _(signature)_ <br> (Required in New Hampshire) | Phone No. _(630) 654 6067_ |
| Email Address _INFo @ IWAInsurance . Com_ | |
| Agency mailing address _1323 Ogden Ave_ | |
| City _Downers Grove_ | State _IL_ Zip _60515_ |

The signer of this application acknowledges and understands that the information provided in this Application is material to the Insurer's decision to provide the requested insurance and is relied on by the Insurer in providing such insurance. The signer of this application represents that the information provided in this Application is true and correct in all matters. The signer of this Application further represents that any changes in matter inquired about in this Application occurring prior to the effective date of coverage, which render the information provided herein untrue, incorrect or inaccurate in any way will be reported to the insurer immediately in writing. The Insurer reserves the right to modify or withdraw any quote or binder issued if such changes are material to the insurability or premium charged, based on the Insurer's underwriting guides. The Insurer is hereby authorized, but not required, to make any investigation and inquiry in connection with the information, statements and disclosures provided in the Application. The decision of the Insurer not to make or to limit any investigation or inquiry shall not be deemed a waiver of any rights by the Insurer and shall not estop the Insurer from relying on any statement in this Application in the event the Policy is issued. It is agreed that this Application shall be the basis of the contract should a policy be issued and it will be attached and become a part of the Policy.

**New York Fraud Statement:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty not to exceed five thousand dollars and the state value of the claim for each such violation. This page intentionally left blank.

Applicant's Signature _Tom. Valroha_      Title _GM ._

_President, Chairperson of the Board, Managing Member or Executive Director_

Date _1 - 15 - 22_

(Same as above)

Retail agency name _____ License No. _____

Agent's signature _(signature)_    Phone No. _(630 - 654 - 6067_
(Required in New Hampshire)

Email Address _INFo@ IWAinsurance . Com_

Agency mailing address _Insurance World Agency, Inc._
_1323 Ogden Avenue_
City _____ _Downers Grove IL 60515_   State _____ Zip _____

**Lyndon Southern Insurance Company**
**A Stock Company**
Administrative address: 10151 Deerwood Park Blvd, Bldg. 100, Suite 500
Jacksonville, FL 32256
Toll Free 1-800-888-2738

**EXHIBIT**
**B**

**Policy No.** **FOR-2000320-00**

**Renewal of:** **NEW**

## EMPLOYMENT-RELATED PRACTICES LIABILITY
## INCLUDING COVERAGE FOR THIRD-PARTY LIABILITY

### DECLARATIONS

**NOTICE: THIS IS A CLAIMS MADE AND REPORTED POLICY. COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST YOU AND REPORTED TO US WHILE THE COVERAGE IS IN FORCE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US AFTER THE END OF THE POLICY PERIOD OR THE AUTOMATIC REPORTING PERIOD UNLESS, AND TO THE EXTENT, AN EXTENDED REPORTING PERIOD APPLIES. PLEASE REVIEW THE POLICY CARFULLY AND DISCUSS POLICY COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**THE LIMITS OF LIABILITY AVAILABLE TO PAY FOR LOSS, INCLUDING JUDGEMENTS OR SETTLEMENTS, MAY BE REDUCED BY DEFENSE COSTS TO THE EXTENT PROVIDED HEREIN. THE RETENTION AMOUNT SHALL BE APPLIED TO ALL LOSS, INCLUDING DEFENSE COSTS.**

**In consideration for the payment of the premium, and subject to all the terms of the Policy, we agree with you to provide the insurance as stated in the Policy.**

**NAMED INSURED(S) AND ADDRESS:**
**Bedford Transportation LLC/Unified CML LLC**
**5353 W. 73rd Street**
**Bedford Park, IL 60455**

**AGENT NAME AND ADDRESS:**
**Rockwood Programs, Inc.**
**3001 Philadelphia Pike**
**Claymont, DE 19703**
**1-800-558-8808**

**Policy Period:** **From: 02/15/2021** **To: 02/15/2022**
**(at 12:01 a.m. Standard Time at the first Named Insured's mailing address shown above)**

**Limits of Liability** for "**Loss**":

$ **1,000,000** each "**Claim**" and
$ **1,000,000** in the Aggregate

**Retention: $ 10,000** each "**Claim**" including "**Defense Costs**"

**Policy Premium: $** ▮▮▮▮

**Retroactive Date: Full prior acts** This insurance applies to "**Claims**" arising out of a "**Wrongful Employment Act**" and "**Third-Party Wrongful Act**" that takes place on or after the Retroactive Date.

**NOTIFICATION OF CLAIM:**
Specialty Claims Management
C/O Lyndon Southern Insurance Company
PO Box 45153
Jacksonville, Fl. 32232-5153

Phone 800-888-2738 Ext. 8303
Fax: 904-350-1599
specialtyclaims@fortegra.com

**Attached Forms:**
**LSIC-001 (01/19), LSIC-005 (01/19), LSIC-013 (01/19), LSIC-016 (01/19), LSIC-017 (01/19), LSIC-IL01 (01/19), LSIC-IL02 (01/19), IL-P-001 (01/04), LSIC-ISC (06/19), LSIC-1001 (06/19)**

**THESE DECLARATIONS TOGETHER WITH THE COVERAGE FORMS, ENDORSEMENTS, APPLICATION, AND ATTACHMENTS THERETO, COMPLETE THE ABOVE NUMBERED POLICY.**

**COUNTERSIGNED:** **01/21/2021** **BY:** *Nenn W. Clark*
DATE            AUTHORIZED REPRESENTATIVE

# EMPLOYMENT-RELATED PRACTICES LIABILITY

**NOTICE: THIS IS A CLAIMS MADE AND REPORTED POLICY. COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST YOU AND REPORTED TO US WHILE THE COVERAGE IS IN FORCE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US AFTER THE END OF THE POLICY PERIOD OR THE AUTOMATIC REPORTING PERIOD UNLESS, AND TO THE EXTENT, AN EXTENDED REPORTING PERIOD APPLIES. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS POLICY COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**THE LIMITS OF LIABILITY AVAILABLE TO PAY FOR LOSS, INCLUDING JUDGMENTS OR SETTLEMENTS, MAY BE REDUCED BY DEFENSE COSTS TO THE EXTENT PROVIDED HEREIN. THE RETENTION AMOUNT SHALL BE APPLIED TO ALL LOSS, INCLUDING DEFENSE COSTS.**

In consideration of the payment of the premium and in reliance upon the statements contained in the **"Application"** and the materials submitted in connection therewith, **we** agree to this Policy as a contract with **you**.

Throughout the Policy, the words **you** and **your** refer to the **"Named Insured(s)"** shown in the Declarations and any other person(s) or organization(s) qualifying as an **"Insured"** under this Policy. The words **we**, **us**, **our** and **Insurer** refer to the Company providing this insurance.

Other words and phrases that appear in boldface and are enclosed in quotations have special meaning. Refer to **SECTION VIII. DEFINITIONS**.

## SECTION I. INSURING AGREEMENT— WHAT IS COVERED

**A. We shall pay those amounts the "Insured" is legally required to pay as "Loss" by reason of a "Claim" alleging a "Wrongful Act" to which this insurance applies if the "Claim" for a "Wrongful Act" is first made against you and reported to us during the "Policy Period" or any extended reporting period we agree to provide under this Policy.**

**B. Defense**

1. **We** have the right and duty to defend and appoint an attorney to defend any **"Claim"** brought against any **"Insured"** for a **"Wrongful Act"** to which this insurance applies even if the **"Claim"** is frivolous, without merit or fraudulent. If more than one **"Insured"** is involved in a **"Claim"**, the **Insurer** may, in its sole discretion, appoint separate attorneys for one or more of such **"Insureds"** if there is a material (actual or potential) conflict of interest among any such **"Insureds"**. **Our** duty to defend any **"Claim"** ends after the applicable Limits of Liability have been exhausted by payment of **"Loss"**.

2. The **Insurer** shall not seek to allocate, but rather will pay one hundred (100%) percent of, **"Defense Costs"** incurred by an **"Insured"** on account of a **"Claim"** that includes covered and uncovered matters, unless provided for in the jurisdiction in which the Claim was asserted.

3. At **your** request **we** shall defend any criminal proceeding brought against an **"Insured"**, subject to the applicable criminal proceeding sub-limit of liability under **Section IV.A**, until there has been a final adjudication of guilt with respect to the charges against **you** not subject to with respect to the charges against **you** not subject to further appeal. Any **"Defense Costs"** incurred therein shall be included within and serve to reduce **our** Limits of Liability. **Our** defense of any criminal proceeding shall not serve to render **us** liable for any other **"Loss"** incurred in connection with such criminal proceeding, and **we** shall retain the right to withdraw from such defense. Regardless of whether **you** request that **we** defend a criminal proceeding, **we** shall defend any **"Claim"** brought against an **"Insured"** which alleges the same or similar **"Wrongful Act(s)"** as such criminal proceeding.

4. **We** have the right to investigate and settle any **"Claim"** in the manner and to the extent that **we** believe is proper, however, **we** will not settle any **"Claim"** without **your** consent. If **you** refuse to consent to the settlement of a **"Claim"** recommended by **us**, **Section IV.G**. will operate to limit the **Insurer's** liability in connection with such **"Claim"**.

5. **We** shall pay as **"Loss"** all reasonable costs **we** ask the **"Insured"** to incur while helping **us** investigate or defend a **"Claim"**. Per diem earnings lost by the **"Insured"** because of time taken off from work helping **us** investigate or defend a **"Claim"** shall also be paid as **"Loss"**, however, **we** will not pay more than $250 per day for such lost earnings.

6. **We** shall pay as **"Loss"** premiums for appeal bonds, or bonds to release property being used to secure a legal obligation, if required in a "**Claim**" **we** defend. **We** shall only pay, however, for bonds valued up to our applicable Limits of Liability. **We** shall have no obligation to appeal or to obtain these bonds. **We** shall pay as **Loss** the costs assessed against an **Insured** in a "**Claim**" **we** defend.

7. Payments of **"Defense Costs"** are part of any **"Loss"**.

   However, **"Defense Costs"** are not included within and will not serve to reduce **our** Limits of Liability until **"Loss"** exceeds the Retention. Payments of **"Defense Costs"** shall cease when **"Loss"** exceed one hundred (100%) percent of the applicable Limit of Liability.

8. Within the Limits of Liability **we** shall pay all interest on that amount of any judgment:

   **a.** Which accrues after entry of judgment; and

   **b.** Before **we** pay, offer to pay, or deposit in court that part of a judgment within **our** applicable Limits of Liability.

   **We** shall not pay interest which accrues prior to entry of any judgment.


## C. Coverage Territory and Valuation

1. Where legally permissible, **we** shall cover **"Wrongful Act(s)"** occurring anywhere in the world. All premiums, limits, Retentions, **"Loss"** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **"Loss"** under this Policy is in a currency other than United States of America dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **"Loss"** is due, respectively.


## D. Transfer Of Control

1. **You** may take over control of any outstanding "**Claim**" previously reported to **us** only if **we** both agree that **you** should, or if a court orders **you** to do so or if **you** refuse to consent to a settlement of the "**Claim**" as described in **Section IV.G.**

2. If the Limits of Liability are exhausted, **we** will notify **you** of all outstanding "**Claim(s)**" so that **you** can take over control of the defense. **We** will help transfer control to **you**. **We** shall take whatever steps are necessary to continue the defense of any outstanding "**Claim**" and avoid a default judgment during the transfer of control to **you**. If **we** do so, **we** shall not waive or give up any of **our** rights. **You** shall pay all reasonable expenses **we** incur for taking such steps.


## SECTION II. EXCLUSIONS—WHAT IS NOT COVERED

This insurance does not apply to:

**A. Property Damage.** Any **"Claim"** arising out of **"Property Damage"**;

**B. Bodily Injury**. Any **"Claim"** arising out of **"Bodily Injury"**.

This exclusion does not apply to that portion of any **"Claim"** concerning emotional distress, mental anguish or humiliation arising from a **"Wrongful Act"**;

**C. Contractual Liability**. Any **"Claim"** for liability assumed by the **"Insured"** under any contract or agreement. This exclusion, however, shall not apply to any liability the **"Insured"** would have in the absence of the contract or agreement;

**D. Specific Statutes**. Any **"Claim"** arising out of the **"Insured's"** actual or alleged failure to fulfill any duty or obligation imposed, or to refrain from any action prohibited by:

1. the Employee Retirement Income Security Act of 1974 (ERISA);

2. the Comprehensive Omnibus Budget Reconciliation Act of 1985 (COBRA);

3. the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988) (WARN);

4. the Occupational Safety and Health Act (OSHA);

5. the National Labor Relations Act of 1947 (NLRA);

6. the Labor Management Relations Act (LMRA);

7. the Federal Employers' Liability Act (FELA);

8. the Railway Labor Act (RLA); and

9. any similar federal, state or local statutory law or ordinance, or common law, any amendments thereto, and any rules or regulations promulgated thereunder; however, this exclusion shall not apply to any **"Claim"** for actual or alleged **"Retaliation"** on account of the claimant's exercise of rights pursuant to any such law;

E. **Labor Disputes**. Any **"Claim"** arising out of a lockout, strike, picket line, replacement or other similar action, resulting from labor disputes, labor negotiations, or collective bargaining agreements; however, this exclusion shall not apply to any **"Claim"** for actual or alleged **"Retaliation"** on account of the claimant's exercise of rights pursuant to any law governing such labor activities;

F. **Workers' Compensation**. Any **"Claim"** arising out of any workers' compensation, disability insurance or benefits, medical insurance or benefits, severance, social security benefits, wage payment, or unemployment compensation law; however, this exclusion shall not apply to any **"Claim"** for actual or alleged **"Retaliation"** on account of the claimant's exercise of rights pursuant to any such law;

G. **Accommodations**. Any costs or expenses incurred by an **"Insured"** to make the **"Named Insured(s)"** premises accessible to or otherwise accommodate persons with disabilities as required by the Americans with Disabilities Act of 1990 (ADA) or similar federal, state, or local statutory law or ordinance, or common law, any amendments thereto, or any regulations promulgated thereunder;

H. **Non-Monetary Relief**. Any **"Claim"** solely seeking, or that portion of any **"Claim"** seeking, non-monetary relief including injunctive or declaratory relief, as well as the cost of implementing any such relief including, but not limited to, employment-related education or training, job reinstatement, or other equitable remedies;

I. **Prior Knowledge & Claim**. Any **"Claim"** arising out of incidents or circumstances of which any **"Insured"** had knowledge of and which any **"Insured"** could reasonably foresee might result in a **"Claim"**, or any asserted or pending **"Claim"**, prior to the Policy effective date shown in the Declarations;

J. **Prior Notice Circumstances**. Any **"Claim"** arising out of incidents or circumstances which have been the subject of any written notice given under any policy of which this Policy is a direct or indirect renewal or replacement, or any other policy which preceded this Policy.

K. **Written Employment Contract**. Any **"Claim"** arising out of any written employment contract;

L. **Leasing Companies**. Any **"Claim"** by or against any person or entity that supplies **"Leased Workers"** to **you**;

M. **Wage and Hour Laws**. Any **"Claim"** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving or connected to, any private, governmental or administrative complaint or lawsuit for violation of federal, state, or local C laws or regulations, including, but not limited to, any request for monetary or non-monetary compensation or benefits that may be owed to one or more past or present **"Employees"**.

N. **Third-Party Wrongful Act**. Any **"Claim"** arising out of a **"Third-Party Wrongful Act"**. No **"Wrongful Act"** of any individual **"Insured"** nor any fact pertaining to any individual **"Insured"** shall be imputed to any other individual **"Insured"** for the purposes of determining the applicability of Exclusion I. above.

**SECTION III. WHO IS AN INSURED**

**A. Individual**. If **you** are shown in the Declarations as an individual, **you** and **your** spouse or **"Domestic Partner"** are **"Insured(s)"**, but only for the conduct of a business of which **you** are the sole owner.

**B. Corporation**. If **you** are shown in the Declarations as a corporation or organization other than a partnership or joint venture, **you** are an **"Insured"**. **Your** stockholders are also **"Insured(s)"**, but only for liability resulting from the conduct of **your** business.

**C. Partnership or Joint Venture.** If **you** are shown in the Declarations as a partnership or joint venture, **you** are an **"Insured"**. **Your** partners or co-venturers and their spouses or **"Domestic Partners"** are also an **"Insured"**, but only for liability resulting from the conduct of **your** business.

**D. Limited Liability Company**. If **you** are shown in the Declarations as a limited liability company, **you** are an **"Insured"**. **Your** members and their spouses or **"Domestic Partners"** are also **"Insured(s)"**, but only with respect to the conduct of **your** business.

**E. Heirs, Executors, Administrators, Assigns and Legal Representatives**. **Your** heirs, executors, administrators, assigns and legal representatives are "**Insured(s)**", but only for liability resulting from the conduct of **your** business and only in the event of **your** death, incapacity or bankruptcy.

**F. Subsidiaries**. Any subsidiary in which **you** own greater than fifty (50%) percent is an **"Insured"** as long as the subsidiary is listed on the **"Application"** for coverage and is in a like kind business as that of the first **"Named Insured"** in the Declarations.

**G. Acquisitions**. Any organization that **you** acquire or form while this Policy is in effect is an **"Insured"** if **you** own greater than fifty (50%) percent of it, but no such organization will be covered under this Policy for more than ninety (90) days from the date that **you** acquire or form it, or for the remainder of the **"Policy Period"**, whichever is less, unless **you** have notified **us** in writing of such acquisition or formation and **we** have agreed, by written endorsement to this Policy, to provide such coverage. There will be no coverage for any **"Claim"** or **"Loss"** that arises out of a **"Wrongful Act"** that happened or commenced before **you** acquired or formed such organization, or for any **"Claim"** or **"Loss"** in which such organization is covered under any other insurance.

**H. Employee(s)**. **Your "Employee(s)"** and directors and officers are an **"Insured"** only for the conduct of **your** business on **your** behalf within the scope of their duties as such. An **"Employee"**, director or officer will only be an **"Insured"** if he/she was **your "Employee"**, director or officer on the date of the alleged **"Wrongful Act"**.

**SECTION IV. LIMITS OF LIABILITY**

**A.** The limits shown in the Declarations to this Policy and the information contained in this section state the most **we** shall pay as **"Loss"** regardless of the number of:

**1.** Persons or organizations covered by this Policy; or

**2.** **"Claim(s)"** made.

**B.** The Aggregate Limit of Liability is the most **we** shall pay for all **"Loss"** covered under this Policy.

**C.** Subject to the Aggregate Limit, the each **"Wrongful Act"** limit is the most **we** shall pay for all **"Loss"** that results from a single **"Wrongful Act"**.

**D.** All **"Claim(s)"** arising from continuous, related, or repeated **"Wrongful Act(s)"** shall be treated as arising out of one **"Wrongful Act"**. Only the Policy in effect when the first such **"Claim"** involving such continuous, related, or repeated **"Wrongful Act(s)"** or is made shall respond to all such **"Claim(s)"**.

**E.** All **"Claim(s)"** arising from continuous, related, or repeated **"Wrongful Act(s)"** shall be deemed to be made on the date that the first such "**Claim**" is made.

**F.** The Limits of Liability of this Policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the **"Policy Period"** shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period shall be deemed part of the last preceding period for purposes of determining the Limits of Liability.

**G.** If **you** refuse to consent to a settlement of any **"Claim"** acceptable to a claimant and recommended by **us**, and **you** elect to contest or continue any legal proceedings, then **our** liability in connection with such **"Claim"** shall not exceed the amount for which the **"Claim"** could have been settled, including **"Defense Costs"** incurred with **our** consent up to the date of such refusal, plus seventy-five (75%) percent of the amount of any **"Loss"** in excess of such amount up to the applicable Limit of Liability. The remaining twenty-five (25%) percent of such **"Loss"** shall be carried by **you** at **your** own risk and be uninsured.

## SECTION V. RETENTION

**You** shall be responsible for the Retention amount shown in the Declarations and **you** may not insure against it. Expenses **we** incur in investigating, defending, and settling any **"Claim"** will be applied toward the Retention. However, such expenses will not include salaries and costs of **our** or **your** employees, employed attorneys and adjusters. The Retention shall apply separately to each "**Wrongful Act",** or continuous, related, or repeated **"Wrongful Act(s)"**. The Retention is not included within the Limits of Liability.

## SECTION VI. CONDITIONS

**We** have no duty to provide coverage under this Policy unless there has been full compliance with all Conditions contained in this Policy.

**A.** **Assignment**. The insurable interest and rights of any **"Insured"** are not assignable. **You** cannot assign or transfer **your** insurable interest and rights in this Policy without **our** written consent attached to the Policy.

**B.** **Bankruptcy or Insolvency**. **Your** bankruptcy, insolvency or inability to pay, or the insolvency of **your** estate, will not relieve **us** from **our** obligation to pay any **"Claim"** otherwise covered by this Policy. Under no circumstances will **your** bankruptcy, insolvency, inability to pay or insolvency of **your** estate require **us** to drop down, in any way replace, or assume any of **your** obligations with respect to **your** Retention.

**C.** **Reporting Requirements In The Event Of An Incident or Potential Claim.**

    **1.** If, during the **"Policy Period"**, incidents or events occur which **you** reasonably believe may give rise to a **"Claim"** for which coverage may be provided hereunder, **you** may, during the **"Policy Period"** or any applicable Extended Reporting Period, give written notice to **us**. Such written notice shall contain:

        **a.** The identity of the person(s) alleging a **"Wrongful Act"**;

        **b.** The identity of the **"Insured(s)"** who allegedly were involved in the incidents or events;

        **c.** The date the alleged incidents or events took place;

        **d.** The date the insured first became aware of the circumstances; and

        **e.** The reason the "**Insured"** anticipates a "**Claim"** may arise from such circumstances.

2. If **you** submit written notice containing items **a.** through **e.** above, then any **"Claim"** subsequently made against an **"Insured"** arising out of such incidents or events shall be deemed, for the purpose of this insurance, to have been first made during the **"Policy Period"** in effect at the time such written notice was submitted to **us**.

**D. Reporting Requirements and Duties When a Claim is Made**

1. If a **"Claim"** is made against any **"Insured"**, **you** must:

   a. Immediately record the specifics of the **"Claim"** and the date received; and

   b. Notify **us** as soon as practicable.

   **You** must see to it that **we** receive written notice of this **"Claim"** as soon as practicable, but in no event after the expiration of the **"Policy Period"**.

2. **You** and any other **"Insured"** must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with any Claim:

   b. Authorize **us** to obtain records and other information:

   c. Cooperate with **us** in the investigation, settlement or defense of any **"Claim"**; and

   d. Assist **us**, upon **our** request, in the enforcement of any right against any person or organization which may be liable to the **"Insured"** because of injury or damage to which this insurance may also apply.

3. No **"Insured"** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without **our** prior consent.

**E. Written Notices** to **Us**. All written notices provided for in this Policy shall be in writing and addressed to the **Insurer** as shown on the **Notices To Insurance Company For Claims** section of the Declarations.

**F. Transfer Of Rights Of Recovery Against Others To Us. You** may be able to recover all or part of "**Loss**" from someone other than **us**. **You**, therefore, shall do all that is possible after "**Loss**" is incurred to preserve any such right of recovery. If **we** make a payment under this Policy, that right of recovery shall belong to **us**. **You** shall do whatever is necessary, including signing documents, to help **us** obtain that recovery. **We** shall be entitled to such recovery only after **you** have been fully compensated.

**G. Automatic Reporting Period**

1. Subject to all of the terms and conditions set forth in this paragraph, **you** have an Automatic Reporting Period of sixty (60) days, starting with the end of the **"Policy Period"**. The coverage under this Policy will then be available for any **"Claim"** first made during such Automatic Reporting Period which arises out of **"Wrongful Act(s)"** which take place prior to the end of the **"Policy Period"** and are otherwise covered by the Policy.

2. This Automatic Reporting Period does not extend the **"Policy Period"** or change the scope of coverage provided. **We** will consider any **"Claim"** first made or brought during the Automatic Reporting Period to have been made on the last date on which this insurance was in effect.

3. The Automatic Reporting Period will apply only if there is a **"Termination of Coverage"**. Coverage under the Automatic Reporting Period may not be canceled.

4. The remaining available Limits of Liability that apply at the end of the **"Policy Period"** are not renewed or increased for **"Claim(s)"** first made or brought during the Automatic Reporting Period.

5. The Automatic Reporting Period, however, will not apply to any **"Claim"** if other insurance covers the **"Claim"** or would cover the **"Claim"** if its limits of coverage had not been exhausted.

**H. Extended Reporting Period**

1. If there is a **"Termination of Coverage"**, **you** shall have the right to purchase additional coverage providing an Extended Reporting Period of up to three (3) years, starting upon the expiration of the Automatic Reporting Period. Coverage under the Extended Reporting Period will be limited to **"Claim(s)"** first made during such Extended Reporting Period which arise out of **"Wrongful Act(s)"** that take place

prior to the end of the **"Policy Period"** and are otherwise covered by the Policy. **You** do not have this right, however, if **we** cancel the Policy for non-payment of premium.

2. The additional premium for the Extended Reporting Period coverage shall be calculated in accordance with our rules and rates. **We** will not charge more than two hundred (200%) percent of the annual premium from the last **"Policy Period"**.

3. To obtain Extended Reporting Period coverage **you** must request it in writing within sixty (60) days after the **"Policy Period"** ends and pay the premium when due. If **you** do so, an Extended Reporting Period cannot be canceled. If **we** do not receive the written request and payment as required, **you** may not exercise this right at a later date.

4. The Limits of Liability that apply at the end of the **"Policy Period"** are not renewed or increased by the issuance of any optional Extended Reporting Period, unless a Reinstatement of Aggregate Limit of Liability Endorsement is issued.

   If the Aggregate Limit of Liability indicated in the Declarations has decreased during the **"Policy Period"** by payment of **"Claims"** first made while the Policy is in effect, then upon the effective date of the Extended Reporting Period Endorsement **we** will reinstate the Aggregate Limit of Liability by the amount incurred up to that time for such **"Claims"**. The reinstated Aggregate Limit of Liability will only apply to **"Claims"** first made against **you** during the Extended Reporting Period. Once reinstated, the Aggregate Limit of Liability for the Extended Reporting Period will be equal to the Aggregate Limit of Liability that was in effect at the inception of the Policy.

5. This insurance, provided during the Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Extended Reporting Period becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

6. Where the optional Extended Reporting Period applies solely due to a **"Termination of Coverage"** based upon a change in coverage terms less favorable to the **"Insured"**, the Extended Reporting Period shall apply only to the extent of such less favorable coverage terms.

**I. Legal Action Against Or By Us.**

1. No one can sue **us** to recover under this Policy unless there has been full compliance with all the terms of this Policy.

2. A person or organization may sue **us** to recover up to the Limits of Liability under this Policy only after **your "Claim"** has been decided by:

   a. A trial, after which a final judgment has been entered; or

   b. A written settlement agreement signed by the party making the **"Claim"** and **us**.

3. No person or organization has the right to join **us** as a party or otherwise bring us into a **"Claim"** asking for **"Loss"** from an **"Insured"**.

4. In the event of failure of the **Insurer** to pay the amount claimed to be due hereunder, the **Insurer** will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the **Insurer's** rights to commence an action in any court of competent jurisdiction in the United States or to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such action may be made upon **your** chairman of the board, chief executive officer, managing director or general counsel (or functional equivalent of any of the foregoing), and that in any such action instituted against the **Insurer** related to this Policy, the **Insurer** will abide by the final nonappealable decision of such court or of any appellate court in the event of an appeal.

**J. Other Insurance.** If any part of **"Loss"** is insured under this Policy and any other current or prior policy, this Policy will be excess over any other valid and collectible insurance available to the **"Insured"**, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the limits of liability provided by this Policy.

**K. Policy Changes.** This Policy contains all the agreements between **you** and **us** concerning this insurance. The first **"Named Insured"** in the Declarations is authorized to request changes in this Policy. This Policy can only be changed by a written endorsement **we** issue and is made part of this Policy.

**L. Representations and Covenants**. The **"Insured(s)"** represents the statements in the **"Application"** are true, accurate and complete. The **"Insured(s)"** further acknowledge(s) that this Policy is issued by the Company in reliance upon such statement.

**M. Special Rights And Duties Of First Named Insured**.

**You** agree that when there is more than one person or entity covered under this Policy, the first **"Named Insured"** in the Declarations shall act on behalf of all **"Insured(s)"** as to:

**1.** Giving and receiving notice of cancellation;

**2.** Payment of premiums and receipt of return premiums;

**3.** Acceptance of any endorsements to this Policy; or

**4.** Purchasing or deciding not to purchase the Extended Reporting Period Endorsement.

**N. Acquisition of Named Insured**

If during the **"Policy Period"** (a) the **"Named Insured"** is acquired by merger into or consolidation with another entity, or (b) another entity, or person(s) or group of entities acquires more than fifty (50%) percent of the **"Named Insured"**, then the premium shall become fully earned and coverage under this Policy shall continue until the expiration of the **"Policy Period"**, but only for any **"Claim"** first made during the **"Policy Period"** for **"Wrongful Act(s)"** which take place prior to such merger, consolidation or acquisition. **You** shall give written notice of such merger, consolidation or acquisition to **us** within sixty (60) days after such merger, consolidation or acquisition. Upon receipt of such notice, **we** shall promptly provide to **you** a quotation for an extension of coverage up to three years with respect to **"Claim(s)"** first made during such **"Policy Period"** for **"Wrongful Act(s)"** which take place prior to such merger, consolidation or acquisition (Run-Off Period). **You** shall agree, (a) to pay during the Run-off Period any additional premium required by **us**, (b) that any premium paid or to be paid under this Policy is deemed fully earned upon the inception of such coverage extension, and (c) to accept any additional terms and conditions required by **us**. The Limits of Liability that apply at the end of the **"Policy Period"** are not renewed or increased for any **"Claim"** first made and reported during this extension of coverage.

**O. Representations and Severability**

By acceptance of this Policy, the **"Insureds"** agree that the statements in the **"Application"** are their representations, that such representations shall be deemed material to the acceptance of the risk or the hazard assumed by **Insurer** under this Policy, and that this Policy is issued in reliance upon the truth of such representations. Such written **"Applications"** for coverage shall be construed as a separate application for coverage by each **"Insured"**. With respect to the declarations and statements contained in such written applications for coverage, no statement in the **"Application"** or knowledge or information possessed by any **"Insured"** shall be imputed to any other **"Insured"** for the purpose of determining if coverage is available; however, knowledge or information possessed by **your** chairman of the board, chief executive officer, managing director or general counsel (or functional equivalent of any of the foregoing) may be imputed to the **"Named Insured(s)"**.

**SECTION VII. CANCELLATION/NONRENEWAL**

**A.** The first **"Named Insured"** shown in the Declarations may cancel this Policy by mailing or delivering to **us** advance written notice of cancellation.

**B.** **We** may cancel this Policy only for nonpayment of premium. If **we** so cancel, **we** will mail or deliver to the first **"Named Insured"**, at the address shown in the Declarations, written notice of cancellation at least (15) fifteen days before the effective date of said cancellation.

**C.** Notice of cancellation will state the effective date of cancellation. The **"Policy Period"** will end on that date.

**D.** If this Policy is canceled, **we** will send the first **"Named Insured"** any premium refund due. If **we** cancel, to the extent any premium paid prior to nonpayment when due of the full premium shown in the Declarations exceeds the amount of premium payable through the effective date of cancellation, the refund will be pro rata. If the first **"Named Insured"** cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.

**E.** The Policy cannot be canceled by either party after the premium for an Extended Reporting Period or Run-Off Period is paid.

**F.** If **we** decide not to renew this Policy, **we** will mail or deliver to the first **"Named Insured"** shown in the Declarations written notice of the nonrenewal not less than sixty (60) days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION VIII. DEFINITIONS

**A.** **"Application"** means all signed applications and any attachments and materials submitted therewith for this Policy and for any policy in an uninterrupted series of policies issued by the **Insurer** of which this Policy is a renewal or replacement. All such applications, materials and information are deemed attached to and incorporated into this Policy.

**B.** **"Bodily Injury"** means any actual or alleged physical injury, sickness, or disease, including death resulting therefrom.

**C.** **"Claim(s)"** means:

   **1.** A written or oral demand or notice for monetary, non-monetary or injunctive relief;

   **2.** A civil, administrative or regulatory proceeding; or

   **3.** An arbitration, mediation, or any other alternative dispute resolution proceeding seeking Loss to which the **"Insured"** must submit or may submit with **our** prior consent, received by an Insured in which a **"Wrongful Act" is** alleged. **"Claim(s)"** include any appeal from the proceedings identified at b. and c. above.

All Claims arising out of the Interrelated Wrongful Acts, shall constitute one Claim. The Claim is deemed to have been made on the date the first of such Claims was asserted against the Insured.

**D.** **"Defense Costs"** means reasonable and necessary fees, costs and expenses incurred by or at the direction of the Insurer in the defense of a **"Claim"**, or a criminal proceeding if **we** exercise **our** option to defend a criminal proceeding brought against an **"Insured"**.

**E.** **"Discrimination"** means the failure or refusal to hire, any failure to promote, any wrongful demotion or discharge, any wrongful failure to grant tenure, or any other wrongful treatment of persons based on their race, sex, gender identification, color, religion, sexual orientation or preference, marital status, pregnancy, age, national origin, mental or physical disability including a disability resulting from human immunodeficiency virus (HIV) or acquired immunodeficiency syndrome (AIDS), or any other status that is protected pursuant to any applicable federal, state, or local statute or ordinance which is employment-related.

**F.** **"Domestic Partner"** means any person who qualifies as a domestic partner under the provisions of any federal, state, or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by the **"Named Insured"**.

**G.** **"Employee"** means an individual whose labor or service is engaged by and directed by the **"Insured"** for remuneration, including directors and officers. This includes part-time workers, seasonal workers, temporary workers, volunteers, interns, and management or supervisory workers. **"Leased Workers"** and independent

contractors are also included in the definition of **"Employee"**; provided that

1. all **"Leased Workers"** and independent contractors are under the supervision and control of the **"Insured"**, and

2. no other insurance coverage applies to such **"Leased Workers"** and independent contractors.

H. **"Harassment"** means:

1. unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature in the course of an **"Insured's"** employment with **you**, creates an environment that interferes with the conduct of **your** business, or creates an intimidating, hostile, offensive or abusive environment; or

2. harassment of a non-sexual nature, including verbal, visual or physical conduct which creates an environment that interferes with the conduct of **your** business, or creates an intimidating, hostile, offensive or abusive environment.

I. **"Insured(s)"** means any person or organization qualifying as such under **SECTION III.** titled **WHO IS AN INSURED**.

J. **"Leased Workers"** means any worker leased by the **"Insured"** to perform duties related to the conduct of the **"Insured's"** business pursuant to a written agreement between the **"Insured"** and a labor leasing firm.

K. **"Loss"** means a judgment, settlement, statutory attorney fees, **"Defense Costs"** and other costs associated with the investigation, defense, appeal and conclusion of any **"Claim"**, including but not limited to the reasonable costs **we** ask the **"Insured"** to incur, per diem earnings lost by the **"Insured"** because of time taken off from work helping us investigate or defend a **"Claim"**, compensatory damages, and liquidated, punitive, multiplied and exemplary damages (where insurable under applicable law), back pay and front pay. **"Loss"** does not include wage, salary, bonus and severance payments, stock options nor benefits, earned in the course of employment by an **"Employee"** but not paid by the **"Insured"**, nor does **"Loss"** include fines, taxes, penalties, the return, withdrawal or restitution of fees, expenses or charges, costs incurred as a result of any non-pecuniary or injunctive relief, or matters which are deemed uninsurable by law.

The law of the jurisdiction most favorable to the insurability of liquidated, punitive or exemplary damages shall control whether such damages are insurable, provided that such jurisdiction is where

1. Those damages were awarded or imposed;

2. Any **"Wrongful Act"** was committed for which such damages were awarded or imposed;

3. The **"Named Insured"** is incorporated or has its principal place of business; or

4. The **"Insurer"** is incorporated or has its principal place of business.

L. **"Named Insured"** means the individual(s) or organization(s) shown in the Declarations to this Policy.

M. **"Policy Period"** means the period commencing on the effective date shown in the Declarations. This period ends on the earlier of the expiration date of this Policy or **"Termination of Coverage"**.

N. **"Property Damage" means** actual or alleged physical injury to, or destruction of, tangible property including the loss of use of tangible property, or the loss of use of tangible property, which has not been physically injured or destroyed.

O. **"Retaliation"** means unlawful or abusive treatment resulting from an **"Employee's"** exercise or attempted exercise of any rights under law.

P. **"Termination of Coverage"** means cancellation or nonrenewal of the Policy by **us** or by the **"Named Insured"** for any reason, or where there is a decrease in the Limits of Liability, an increase in the Retention, or

any other change in coverage less favorable to **you**. The offer of a renewal Policy with an increase in premium shall not be deemed a change in coverage less favorable to **you**.

**Q.** **"Third-Party Wrongful Act(s)"** means any of the following, whether actual or alleged, claimed by or on behalf of an existing or former client, customer, supplier, vendor, patient or business invitee, or any other person not an **"Employee"**, and only if committed or allegedly committed by any of the **"Insureds"** in their capacity as such, resulting from **"Discrimination"**, **"Harassment"**, defamation, failure to enforce policies, false imprisonment, invasion of privacy, libel/slander, malicious prosecution, misrepresentation, negligent hiring or supervision, promissory estoppels and intentional interference with contract, or wrongful discipline.

**R.** **"Wrongful Act(s)"** means any of the following, whether actual or alleged, and claimed by or on behalf of an existing or former **"Employee"** or an applicant for employment, and only if committed or allegedly committed by any of the **"Insureds"** in their capacity as such, resulting from employment-related **"Discrimination"**, **"Harassment"**, **"Wrongful Termination"**, or **"Retaliation"**, defamation, denial of training/seniority, failure to enforce policies, failure to hire, failure to grant tenure, false imprisonment, invasion of privacy, libel/slander, malicious prosecution, misrepresentation, negligent evaluation, negligent hiring or supervision, promissory estoppels and intentional interference with contract, violations of the Uniformed Services Employment and Reemployment Rights Act, violations of the Family Medical Leave Act, wrongful demotion, wrongful discipline or wrongful deprivation of career opportunity. **"Wrongful Acts" which share a common nexus of fact, series of acts or are causally connected shall be deemed Interrelated "Wrongful Acts". Interrelated "Wrongful Acts" shall be deemed to have first occurred on the date the first of such acts occurred.**

**S.** **"Wrongful Termination"** means any actual or alleged wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | Endorsement Number |
|---|---|
| **Bedford Transportation LLC/Unified CML LLC** | **1** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **FOR** | **2000320-00** | **02/15/2021 - 02/15/2022** | **02/15/2021** |

| Issued by   (Name of Insurance Company) |
|---|
| **Lyndon Southern Insurance Company** |

**DEFENSE COSTS IN-ADDITION-TO LIMITS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

EMPLOYMENT- RELATED PRACTICES LIABILITY INSURANCE POLICY

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that this Policy is amended as follows:

**SECTION I. INSURING AGREEMENT – WHAT IS COVERED**, Subsection **B.7.** is deleted in its entirety and replaced with the following:

Payments of **"Defense Costs"** up to the amount of $ __100,000__ (Additional Defense Costs Limits of Liability), shall initially be in addition to the Policy's original Aggregate Limits of Liability shown in the Declarations of the Policy. The Additional Defense Costs Limits of Liability shall apply on an aggregate basis for all **"Claims"**. Upon exhaustion of the Additional Defense Costs Limits of Liability, any additional **"Defense Costs"** shall be a part of **"Loss"** and reduce, and may potentially exhaust, the original Aggregate Limits of Liability shown in the Declarations of the Policy. **"Defense Costs"** are not included within and will not serve to reduce the Additional Defense Costs Limits of Liability or **our** original Aggregate Limits of Liability until **"Defense Costs"** or **"Loss"** exceeds the Retention. Payment of **"Defense Costs"** shall cease when **"Loss"** exceeds 100% of the original Aggregate Limits of Liability shown in the Declarations of the Policy.

**SECTION IV. LIMITS OF LIABILITY**, Subsection **A.** is deleted in its entirety and replaced with the following:

The limits shown in the Declarations to this Policy and the information contained in this section fix the most **we** shall pay as **"Loss"** regardless of the number of:

1. Persons or organizations covered by this Policy; or
2. **"Claim(s)"** made.

Notwithstanding the foregoing, in the event the Policy does not contain an Absolute Wage and Hour Laws Exclusion Endorsement, a sub-limit of $100,000 is the most **we** will pay for any **"Defense Costs"** associated with any and all **"Claims"** based upon or arising out of any private, governmental, or administrative complaint or lawsuit for violation of federal, state, or local wage and hour laws or regulations, including, but not limited to, any request for monetary or non-monetary compensation or benefits that may be owed to one or more past or present **"Employees"**.  This sub-limit is part of, and not in addition to, the Additional Defense Costs Limits of Liability and/or the original Aggregate Limits of Liability shown in the Declarations of the Policy.

**SECTION IV. LIMITS OF LIABILITY**, Subsection **B.** is deleted in its entirety and replaced with the following:

The Additional Defense Costs Limits of Liability and the original Aggregate Limits of Liability shown in the Declarations of the Policy are the most **we** shall pay for all **"Defense Costs"** covered under this Policy subject to such Aggregate Limits of Liability being the most **we** will pay for all **"Loss"** (including **"Defense Costs"** upon exhaustion of the Additional Defense Costs Limits of Liability) covered under this Policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | Endorsement Number |
|---|---|
| **Bedford Transportation LLC/Unified CML LLC** | **2** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **FOR** | **2000320-00** | **02/15/2021 – 02/15/2022** | **02/15/2021** |

| Issued by   (Name of Insurance Company) |
|---|
| **Lyndon Southern Insurance Company** |

### IMMIGRATION COVERAGE EXTENSION/DEFENSE SUBLIMIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

EMPLOYMENT- RELATED PRACTICES LIABILITY INSURANCE POLICY

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that this Policy is amended as follows:

Section **I. INSURING AGREEMENT – WHAT IS COVERED**, is amended to add a Subsection at the end of **B. Defense**, as follows:

> **We** shall defend any otherwise covered **"Claim"** against an **"Insured"** alleging violations of the Immigration Reform Control Act of 1986 or any other similar federal, state of local laws or regulations (collectively "Wrongful Immigration Practices Act"), subject to the applicable Wrongful Immigration Practices Act sub-limit of liability under **Section IV.A**, until there has been a final adjudication against **you** with respect to the Wrongful Immigration Practices Act not subject to further appeal. Any **"Defense Costs"** incurred therein shall be included within and serve to reduce **our** Limits of Liability. **Our** defense of that part of any **"Claim"** involving a Wrongful Immigration Practices Act shall not serve to render **us** liable for any other **"Loss"** incurred in connection with such Wrongful Immigration Practices Act, and **we** shall retain the right to withdraw from such defense.

**SECTION IV. LIMITS OF LIABILITY**, Subsection **A.** is amended to add the following at the end thereof:

> Notwithstanding the foregoing, a separate sub-limit up to a maximum of $25,000 is the most **we** will pay for the following:
>
> **1.** any **"Defense Costs"** associated with the defense of that part of any **"Claim"** involving a Wrongful Immigration Practices Act.
>
> This sub-limit is part of, and not in addition to, the limits shown in the Declarations.
>
> Notwithstanding the above, no coverage shall be available for any **"Claim"** alleging a Wrongful Immigration Practices Act which arises from any potential **"Claim"** or circumstance of which **your** chairman of the board, chief executive officer, managing director or general counsel (or functional equivalent of any of the foregoing) had knowledge prior to the inception of the Policy.
>
> Coverage pursuant to this Endorsement is conditioned upon the **"Insured's"** compliance with the rules and regulations promulgated by the Department of Homeland Security ("DHS") and the U.S. Immigration and Customs Enforcement concerning responses to Social Security Administration Employee Correction Requests (no match letters) or the DHS Notice of Suspect Documents.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | Endorsement Number |
|---|---|
| **Bedford Transportation LLC/Unified CML LLC** | **3** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **FOR** | **2000320-00** | **02/15/2021 – 02/15/2022** | **02/15/2021** |

| Issued by   (Name of Insurance Company) |
|---|
| **Lyndon Southern Insurance Company** |

# WAGE AND HOUR LAWS ENDORSEMENT

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that this Policy is amended as follows:

**SECTION II. EXCLUSIONS – WHAT IS NOT COVERED**, Subsection **M. Wages and Hour Laws**, is deleted in its entirety and replaced with the following:

**M. Wage and Hour Laws**. Any **"Claim"** based upon or arising out of any private, governmental or administrative complaint or lawsuit for violation of federal, state, or local wage and hour laws or regulations, including, but not limited to, any request for monetary or non-monetary compensation or benefits that may be owed to one or more past or present **"Employees"**. Notwithstanding the foregoing, the coverage provided by this Endorsement is limited to those amounts solely attributable to the defense **we** provide for **you** with regard to such a **"Claim"**, subject to the applicable wage and hour sub-limit of liability under Section IV.A, until there has been a final adjudication not subject to further appeal that **you** committed a violation of any federal, state, or local wage and hour laws or regulations.

We will not provide a defense for any such **"Claim"** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving or connected to:

1. any private, governmental or administrative complaint or lawsuit for violation of federal, state, or local wage and hour laws or regulations occurring or alleged to have occurred before  F/P/A_____ ; and

2. any private, governmental or administrative complaint or lawsuit for violation of federal, state, or local wage and hour laws or regulations occurring or alleged to have occurred before  F/P/A_____  that are similar, related, continuous, or logically or casually connected, by reason of any common fact, circumstance, situation, transaction, event or decision, to such complaint or lawsuit occurring or alleged to have occurred before  F/P/A_____ , regardless of whether such complaint or lawsuit occurred or was alleged to have occurred before  F/P/A_____  and such complaint or lawsuit occurred or was alleged to have occurred on or after  F/P/A_____  concern the same or different claimants, **"Employees"**, and/or "**Insureds**".

**SECTION IV. LIMITS OF LIABILITY**, Subsection **A.** is deleted in its entirety and replaced with the following:

**A.** The limits shown in the Declarations to this Policy and the information contained in this section state the most **we** shall pay as **"Loss"** regardless of the number of:

1. Persons or organizations covered by this Policy; or

2. **"Claim(s)"** made.

Notwithstanding the foregoing, a separate sub-limit of $ 100,000 is the most **we** will pay for each of the following:

1. any "**Defense Costs**" associated with any and all "**Claims**" or administrative complaint or lawsuit for violation of federal, state, or local wage and hour laws or regulations, including, but not limited to, any request for monetary or non-monetary compensation or benefits that may be owed to one or more past or present "**Employees**"; and

2. any "**Defense Costs**" associated with the defense of a criminal proceeding.

This sub-limit is part of, and not in addition to, the limits shown in the Declarations.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured **Bedford Transportation LLC/Unified CML LLC** | | | Endorsement Number **4** |
|---|---|---|---|
| Policy Symbol **FOR** | Policy Number **2000320-00** | Policy Period **02/15/2021 - 02/15/2022** | Effective Date of Endorsement **02/15/2021** |
| Issued by   (Name of Insurance Company) **Lyndon Southern Insurance Company** | | | |

# THIRD-PARTY WRONGFUL ACTS ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that this Policy is amended as follows:

**SECTION II. EXCLUSIONS – WHAT IS NOT COVERED**, Subsection **N.** "**Third-Party Wrongful Act**" is deleted in its entirety.

**SECTION VIII. DEFINITIONS**, Subsection **R. "Wrongful Act"** is deleted in its entirety and replaced with the following:

R.  **"Wrongful Act(s)"** means any of the following, whether actual or alleged, and claimed by or on behalf of an existing or former **"Employee"** or an applicant for employment, and only if committed or allegedly committed by any of the **"Insureds"** in their capacity as such, resulting from employment-related **"Discrimination"**, **"Harassment"**, **"Wrongful Termination"**, or **"Retaliation"**, defamation, denial of training/seniority, failure to enforce policies, failure to hire, failure to grant tenure, false imprisonment, invasion of privacy, libel/slander, malicious prosecution, misrepresentation, negligent evaluation, negligent hiring or supervision, promissory estoppels and intentional interference with contract, violations of the Uniformed Services Employment and Reemployment Rights Act, violations of the Family Medical Leave Act, wrongful demotion, wrongful discipline or wrongful deprivation of career opportunity.

**"Wrongful Act(s)"** shall also mean a **"Third-Party Wrongful Act"**.

Notwithstanding the foregoing, a separate sub-limit of $ 1,000,000   is the most **we** will pay for any **"Claim"** alleging a **"Third-Party Wrongful Act".**

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS OF THE POLICY REMAIN UNCHANGED.

LSIC-IL01 0119

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CIVIL UNION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Bedford Transportation LLC/Unified CML LLC | | | 5 |
| Policy Symbol<br>FOR | Policy Number<br>2000320-00 | Policy Period<br>02/15/2021-02/15/2022 | Effective Date of Endorsement<br>02/15/2021 |
| Issued by    (Name of Insurance Company) | | | |
| Lyndon Southern Insurance Company | | | |

This endorsement modifies insurance provided under the following:

EMPLOYMENT– RELATED PRACTICES LIABILITY INSURANCE POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

**"Family member"** means a person related to the:

1. Individual **"Named Insured"** by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such **"Named Insured's"** household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term **"family member"** is replaced by the following:

**"Family member"** means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

LSIC-IL02 0119

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS AMENDATORY ENDORSEMENT

| Named Insured<br>Bedford Transportation LLC/Unified CML LLC | | | Endorsement Number<br>6 |
|---|---|---|---|
| Policy Symbol<br>FOR | Policy Number<br>2000320-00 | Policy Period<br>02/15/2021-02/15/2022 | Effective Date of Endorsement<br>02/15/2021 |
| Issued by (Name of Insurance Company)<br>Lyndon Southern Insurance Company | | | |

This endorsement modifies insurance provided under the following:

EMPLOYMENT-RELATED PRACTICES LIABILITY INSURANCE POLICY

In consideration of the premium charged, it is hereby understood and agreed that this Policy is amended as follows:

I.  **SECTION I. INSURING AGREEMENT – WHAT IS COVERED**, subsection **B. Defense**, paragraph **8.** is deleted and replaced with the following:

   8.  In addition to the Limits of Liability, **we** shall pay all interest on that amount of any judgment:

      a.  Which accrues after entry of judgment; and

      b.  Before **we** pay, offer to pay, or deposit in court that part of a judgment within **our** applicable Limits of Liability.

   **We** shall not pay interest which accrues prior to entry of any judgment.

II. **SECTION VI. CONDITIONS**, subsection **H. Extended Reporting Period**, paragraphs **1.** and **2.** are deleted replaced with the following:

   1.  If there is a **"Termination of Coverage"**, **you** shall have the right to purchase additional coverage providing an Extended Reporting Period of one (1), two (2) or three (3) years, starting upon the expiration of the Automatic Reporting Period. Coverage under the Extended Reporting Period will be limited to **"Claim(s)"** first made during such Extended Reporting Period which arise out of **"Wrongful Employment Act(s)"** or **"Third-Party Wrongful Act(s)"** that take place prior to the end of the **"Policy Period"** and are otherwise covered by the Policy.

   2.  The additional premium for the Extended Reporting Period coverage shall be calculated in accordance with **our** rules and rates and will be a percentage of the annual premium from the last **"Policy Period"**. The additional premium will be computed as follows:

            1 Year: 100% of the expiring annual policy premium

            2 Years: 150% of the expiring annual policy premium

            3 Years: 200% of the expiring annual policy premium

III. **SECTION VI. CONDITIONS**, subsection **H. Extended Reporting Period**, paragraph **6.** is deleted in its entirety.

IV. **SECTION VI. CONDITIONS**, subsection **J. Other Insurance** is deleted and replaced with the following:

**J. Other Insurance.** If any part of **"Loss"** is insured under this Policy and any other current or prior policy, we will share proportionately with such other insurance; unless such other insurance is written only as a specific excess insurance over the limits of liability provided by this Policy.

**V.** **SECTION VII. CANCELLATION/NONRENEWAL**, subsection **B.** is deleted and replaced with the following:

   **B.** **We** may cancel this Policy only for nonpayment of premium. If **we** so cancel, **we** will mail to all **"Named Insureds"**, at the last mailing address known to us, written notice of cancellation at least fifteen (15) days before the effective date of said cancellation. We will also mail notice to the **"Named Insured's"** agent or broker, if known. Proof of mailing on a post office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service will be sufficient proof of notice.

**VI.** **SECTION VII. CANCELLATION/NONRENEWAL,** subsection **F.** is replaced by the following:

   **F.** If **we** decide not to renew this Policy, **we** will mail to all **"Named Insureds"**, at the last mailing address known to us, written notice of the nonrenewal not less than sixty (60) days before the expiration date. We will also mail notice to the **"Named Insured's"** agent or broker, if known. Proof of mailing on a post office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service will be sufficient proof of notice.

**VII.** The following is added to **SECTION VIII. DEFINITIONS,** subsection **D. "Defense Costs"**:

   However, **"Defense Costs"** shall not include any routine ongoing expenses of **ours**, such as but not limited to claim investigators or adjusters or salaries of staff attorneys. Such costs do not reduce the Limit of Liability stated in the Declarations.

**VIII.** **SECTION VIII. DEFINITIONS**, subsection **K. "Loss"** is deleted and replaced with the following:

   **K.** "**Loss**" means a judgment, settlement, statutory attorney fees, **"Defense Costs"** and other costs associated with the investigation, defense, appeal and conclusion of any **"Claim"**, including but not limited to the reasonable costs **we** ask the **"Insured"** to incur, per diem earnings lost by the **"Insured"** because of time taken off from work helping **us** investigate or defend a **"Claim"**. Where insurable under applicable law, **"Loss"** also includes compensatory damages, and liquidated, punitive, multiplied and exemplary damages (coverage for punitive and exemplary damages does not apply in Illinois), back pay and front pay. **"Loss"** does not include wage, salary, bonus and severance payments, stock options nor benefits, earned in the course of employment by an **"Employee"** but not paid by the **"Insured"**, nor does **"Loss"** include fines, taxes, penalties, the return, withdrawal or restitution of fees, expenses or charges, costs incurred as a result of any non-pecuniary or injunctive relief, or matters which are deemed uninsurable by law.

   The law of the jurisdiction most favorable to the insurability of liquidated, punitive or exemplary damages shall control whether such damages are insurable, provided that such jurisdiction is where:

   **1.** Those damages were awarded or imposed;

   **2.** Any **"Wrongful Employment Act"** or **"Third-Party Wrongful Act"** was committed for which such damages were awarded or imposed;

   **3.** The **"Named Insured"** is incorporated or has its principal place of business; or

   **4.** The **"Insurer"** is incorporated or has its principal place of business.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.**

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**IN WITNESS WHEREOF**, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company. Signed at Our Administrative Office in Jacksonville, Florida on the Effective Date of this Policy.

`

Secretary                                                    President