**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LYNDON SOUTHERN INSURANCE COMPANY,

Plaintiff,

v.

BEDFORD TRANSPORTATION, LLC, and UNIFIED CML, LLC, BIONKA LEWIS, JONATHAN TULLIS, EQUARION GILLS, DIANE JOHNSON,

Defendant(s).

BEDFORD TRANSPORTATION, LLC, and UNIFIED CML, LLC,

Counter-Plaintiffs,

v.

LYNDON SOUTHERN INSURANCE COMPANY,

Counter-Defendant.

Case No. 24-cv-7730

Judge Mary M. Rowland

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lyndon Southern Insurance Company ("Fortegra") brought this action against Defendants Bedford Transportation, LLC ("Bedford") and Unified CML, LLC ("Unified"), (collectively, "Insureds" or "Counter-Plaintiffs"), and nominal Defendants Bionka Lewis, Jonathan Tullis, Equarion Gills, and Diane Johnson

asserting three counts seeking a declaratory judgment that Fortegra has no duty to defend or indemnify Insureds under their Employment-Related Practices Liability Insurance ("EPLI") policy. [1]. Insureds responded with two counterclaims alleging breach of contract and bad faith, and seek damages caused by Fortegra's alleged breach. [15]. Fortegra and Insureds[1] have filed cross-motions for summary judgment on Counts I through III of Fortegra's complaint and Counts I and II of Insureds' counterclaim. [47] & [48]. For the reasons stated below, Fortegra's motion is granted with respect to Count I of its complaint, and the remaining counts are denied as moot. Insureds' motion is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

[1] Bedford and Unified have jointly filed a motion for summary judgment and a response to Fortegra's motion for summary judgment. For the sake of simplicity, the Court will refer to these joint filings and their accompanying arguments as "Insureds.'"

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chi.*, 4 F.4th 529, 536 (7th Cir. 2021) (citation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (citation omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

Summary judgment is a particularly appropriate mechanism for resolving cases involving the interpretation of written contracts. *Int'l Union of United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W., v. Rockford Powertrain, Inc.*, 350 F.3d 698, 703 (7th Cir. 2003). "Because contracts are interpreted as a matter of law, claims that turn on the interpretation and construction of a contract, rather than on disputed material facts, are suitable for resolution on a motion for summary judgment." *W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.*, 928 F. Supp. 2d. 976, 981 (N.D. Ill. 2013), *aff'd on other grounds*, 794 F.3d 666 (7th Cir. 2015).

In considering cross-motions for summary judgment, the Court construes all facts and draws all reasonable inferences in favor of the party against whom the motion was filed. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 351 (7th Cir. 2017). The Court treats the motions separately. *Marcatante v. City of Chi.*, 657 F.3d 433, 438–39 (7th Cir. 2011); s*ee also Krek Therapeutics, Inc. v. VialGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## BACKGROUND[2]

### I. Local Rule 56.1

Local Rule 56.1 requires the movant to file a statement of material facts demonstrating why the movant contends it is entitled to judgment as a matter of law. L.R. 56.1(a)(2). Paragraph (b)(2) of the Rule requires the opposing party to respond to the movant's Rule 56.1 statement. In order to contest any fact set forth by movant, "the opposing party must expressly state its disagreement and include 'specific references to the affidavits, parts of the record, and other supporting materials'" that

---

[2] The following facts are drawn from the parties' submissions pursuant to Local Rule 56.1, and undisputed unless otherwise noted.

Fortegra's Rule 56.1 statement of facts in support of its motion for summary judgment [51] is abbreviated as "PSOF." Defendants' statement of additional facts [58] is abbreviated as "DSAF." Defendants' separate response to PSOF [59] is abbreviated as "Resp. PSOF." Fortegra's response to DSAF [62] is abbreviated as "Resp. DSAF."

Defendants' Rule 56.1 statement of facts [49] is abbreviated as "CCDSOF." Fortegra's response, [55] at 1–15, and statement of additional facts, [55] at 25–31, are abbreviated as "Resp. CCDSOF" and "CCPSAF," respectively. Defendants did not file a response to Fortegra's CCPSAF.

establish the basis for the disagreement. *Mnyofu v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, 2007 WL 1308523, at * 1 (N.D. Ill. Apr. 27, 2007) (quoting *Gilbert v. Am. Airlines, Inc.*, 2004 WL 783362, at *1 (N.D. Ill. Jan. 7, 2004)); L.R. 56.1(e)(3). The opposing party may also assert facts not set forth in the Local Rule 56.1(a)(2) statement or the Local Rule 56.1(b)(2) response in a separate statement of additional material facts. L.R. 56.1(b)(3). Failure to respond to either the movant's statement of facts or the opponent's statement of additional facts, or responses that do not include specific citations to evidentiary material, may render the facts admitted. L.R. 56.1(e)(3); *Zierler v. Winnebago Cnty. Sheriff Dep't*, 2023 WL 6688587, at *2 (N.D. Ill. Oct. 12, 2023) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material.") (quoting L.R. 56.1(e)(3)); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1017 (N.D. Ill. 2018) (statement of additional facts is deemed admitted if movant fails to submit a reply to the non-moving party's statement of additional facts) (citation omitted).

The parties' Rule 56.1 statements are replete with violations that made the Court's task in evaluating the instant motions substantially more challenging and time consuming. Insureds' Rule 56.1(a)(2) statement of facts contains several statements not supported by the materials cited. *E.g.*, CCDSOF ¶¶ 45, 52. Further, Fortegra's statement of additional facts in opposition to Insureds' motion includes improper argumentative characterizations of facts, CCPSAF ¶¶ 2, 12; *see Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 359–60 (7th Cir. 2009) (affirming decision to disregard "argumentative" statements in Local Rule 56.1 statement), as well as

improper legal conclusions. *See* CCPSAF ¶¶ 12, 16–21; L.R. 56.1(d)(4) (statement of facts "should not contain legal argument").

The violations in the parties' Rule 56.1(b)(2) and (c)(2) responses are even more severe. In their responses, both parties dispute several facts with no citation to the record, *e.g.*, Resp. CCDSOF ¶¶ 59, 60–62; Resp. PSOF ¶¶ 25, 29–30, 33, 49–53, and further improper legal arguments. *E.g.*, Resp. PSOF ¶¶ 48–53. Fortegra's denials repeatedly assert new facts that it thinks help its legal argument, rather than citations that controvert the specific fact in question, Resp. DSAF ¶¶ 21–22, 29–30, 33–36; Resp. CCDSOF ¶¶ 8, 37–38, 40–41; L.R. 56.1(e)(2), admit a fact but perplexingly deny its possible implications, *e.g.*, Resp. DSAF ¶¶ 13, 18, 23, 28–30, 38, 40; Resp. CCDSOF ¶¶ 8, 11, 12, 13, 23, 25–26, 28, 31, 35, 40–42, 46, 48, 50, 55, and state without more that the documents "speak for themselves." Resp. DSAF ¶¶ 12, 35–36; Resp. CCDSOF ¶¶ 20–21, 23, 25–26, 28, 31, 39–40, 56, 63, 67–71; *see Astellas US Holding, Inc. v. Starr Indem. & Liab. Co.*, 566 F. Supp. 3d 879, 891 (N.D. Ill. 2021) ("Saying that a document 'speaks for itself' is not a denial under [the Local Rules].") (citation omitted). These responses frustrate the Rule's purpose of streamlining resolution of summary judgment motions.

What's more, notwithstanding the above violations, Insureds did not file a Rule 56.1(c)(2) response to the facts stated in Fortegra's statement of additional facts. In normal circumstances these facts would be deemed admitted. *Grant v. Kimura Denyoki, Ltd.*, 2005 WL 563099, at *1 (N.D. Ill. Mar. 8, 2005). However, each of Fortegra's additional facts are repeated in some form in its statement of facts in

support of its motion, response to Insureds' statement of additional facts, *and* in its response to Insureds' statement of facts in support of their motion. *See* CCPSAF ¶¶ 2–10, 14–21. Therefore, "the Court will accept [Insureds'] responses set forth in the [Resp. PSOF and DSAF] as if [Insureds] had responded in the same way to [Fortegra]'s [CCPSAF]." *Vazquez v. USCB Corp.*, 2018 WL 3352662, at *2 n.1 (N.D. Ill. July 9, 2018).

In addition to the various violations of Local Rule 56.1, the parties argue at length regarding the admissibility of various affidavits cited throughout their statements of facts. Insureds argue that a declaration submitted by an underwriter responsible for issuance of the EPLI Policy (the "Wallach Declaration")[3] should be disregarded as a self-serving "sham affidavit" because it contradicts his prior testimony. [57] at 13–14. This is not the case. Wallach testified in his deposition that he reviewed the signed and completed insurance application, that he had the information he needed to underwrite the Fortegra insurance policy, and that if he had needed additional information, he would have asked for it. *Id.* Insureds argue that this testimony contradicts the statements in Wallach's affidavit that he needed to know whether Insureds had biometric privacy policies in place for years before the policy application, and that had he known Insureds did not have biometric privacy policies in place for several years, he would not have authorized issuance of the policy.

[3] The versions of the Wallach Declaration filed in support of Plaintiff's motion for summary judgment at [52] and in opposition to Insureds' motion for summary judgment at [55-11] are identical.

*Id.* Insureds also note that Mr. Wallach's testimony that he was only responsible for addressing issues beyond the authority of the other underwriter working on the policy, seemingly implying that he lacks the personal knowledge necessary to submit an affidavit. *Id.* at 13 n.4; *see* Fed. R. Civ. P. 56(c)(4). Even when viewed in the light most favorable to them, Insureds stretch Wallach's declaration beyond recognition. First, the declaration does not state that he needed to know whether Insureds had biometric privacy policies in order to underwrite the policy, it simply states that "[i]f [he] *had known* at the time of underwriting that [Insureds' had potential liability under [BIPA] . . . [he] would not have authorized issuance of the [EPLI] Policy . . . or at a minimum [would have] required materially different terms or pricing." Wallach Decl. ¶ 5 (emphasis added). Wallach's statements in his deposition are not inconsistent with this proposition. The affidavit simply clarifies how the circumstances surrounding Insureds' potential liability related to its use of biometric data would have influenced his underwriting. *See* Wallach Decl.

Second, while the Wallach Declaration may be "self-serving" in that it supports Fortegra's arguments, it is by no means a "sham" as Wallach has sufficient personal knowledge to support the facts contained in his declaration. *See James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020) (declarant may attest to facts of which they have "personal knowledge") (citing Fed. R. Civ. P. 56(c)(4)). Wallach's declaration and deposition confirm that he reviewed Insureds' application and was responsible for signing off on the policy, and that his understanding of materiality is based on over four decades of experience in insurance underwriting. Wallach Decl. ¶ 1. Because

declarations can be used to support summary judgment facts, the Court will take the Wallach Declaration into account in disposing of the parties' motions. Fed. R. Civ. P. 56(c)(4); *Astellas*, 566 F. Supp. 3d at 891 (evidence presented in a "self-serving" affidavit is admissible at summary judgment as long as it meets the usual requirements for evidence at summary judgment) (citation omitted).

In addition to the Wallach Declaration, Fortegra and Insureds each submit affidavits from various legal counsel to support their arguments regarding Insureds' Counterclaims. *See* Shah Decl., [49-19]; Miller Decl., [49-22]; Heckler Decl., [55-10]. As explained below, the Court does not reach these claims, so declines to resolve the parties' disputes with respect to these declarations.

As it recounts the facts below, the Court does not attempt to address all the parties' purported objections or disputes. Instead, unless otherwise stated, the facts described below are accepted as true.

## II. BIPA & Related Discussions

In 2008, the Illinois General Assembly enacted the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA"). PSOF ¶ 11. BIPA regulates the collection, use, handling, storage, and destruction of biometric identifiers, including fingerprints, and requires that entities in possession of biometric information develop a written policy establishing guidelines for the handling and storage of such information and obtain informed consent from the person whose information is being collected. *Id.*; 740 ILCS 14/5; 740 ILCS 14/15.

Insureds are Illinois limited liability companies in the business of manufacturing donuts and providing transportation services. PSOF ¶¶ 3, 5. Since 2014, Unified has used a Kronos Timeclock ("Kronos") timekeeping system to monitor the time worked by its hourly employees. Resp. PSOF ¶ 13. Bedford began using this system in 2019. *Id.* As part of Insureds' engagement with Kronos, Unified executed a Workforce Ready Order Form ("Kronos Agreement") incorporating Kronos's form terms and conditions, which requires its customers to affirm that: (1) they would not "infringe or violate any third-party right, including (but not limited to) . . . privacy, or publicity rights;" (2) they would not "use, or allow the use of, [Kronos's services] in contravention of any federal, state, local, foreign or other applicable law;" (3) they would "agree[] to provide notice to Kronos of any extraordinary privacy or data protection statute, rules, or regulations which are or become applicable to [the] Customer's industry and which would be imposed on Kronos as a result of provision of [its] Services;" and (4) they would ensure that "the transfer to Kronos and storage of any Personally Identifiable Data . . . is permitted under applicable data protection laws and regulations" and the "Customer will obtain consents from individuals for such transfer and storage . . . under applicable laws and regulations." PSOF ¶¶ 14–15, 20.

In April 2019, Unified's outside counsel, Steve Miller, sent an email to Unified's General Manager noting that biometric lawsuits "are all the rage right now," and asked whether Unified required employee consent regarding the Kronos timeclocks. *Id.* ¶ 25. Unified's General Manager replied, "Yikes . . . no. But looks like we will."

*Id.*; [51-6] ("'Yikes' Email"). Miller sent another email later that month, attaching an article describing the BIPA legal landscape as a "minefield" for employers, an article urging employers to be "hypercautious," and a sample biometric data policy. PSOF ¶ 26; [51-7] ("'Minefield' Email"). Bedford adopted a biometric information privacy policy ("BIPA policy") on May 3, 2019. PSOF ¶ 29. Unified CML Operations LLC (a distinct entity from Unified CML LLC) adopted a biometric data policy on the same day. Resp. PSOF ¶¶ 29–30. In February 2020, Kronos issued a customer alert recommending that its clients "consider action to implement the [] procedures and policies [required under BIPA] now."[4] PSOF ¶ 33; [51-11] ("Kronos Customer Alert").

## III. EPLI Application & Policy

Fortegra is a Delaware corporation engaged in the sale of insurance products. PSOF ¶ 2. In January 2021, Insureds submitted an application for an EPLI policy (the "EPLI Application") to Lyndon Southern Insurance Company, Fortegra's primary property and casualty insurer. PSOF ¶ 37; DSAF ¶ 24; [51-10]. Section III, Question 8, asked, "Do you have procedures in place to deal with biometric privacy laws?" PSOF ¶ 41; [51-10] at 24; CCDSOF ¶ 46. The question was answered "yes." PSOF ¶ 41; [51-10] at 24; CCDSOF ¶ 46. Under Section V, Question B, the EPLI Policy asked, "Is any person proposed for this insurance aware of any fact, circumstance, or situation which may result in an employment claim . . . against any

[4] The parties dispute whether Insureds received the Kronos Customer Alert, as it was sent to an individual who was no longer employed at the company. Resp. PSOF ¶ 34.

entity proposed for Insurance or any of its Directors, Officers, Members (if LLC), or Employees?" PSOF ¶ 42. This question was answered "no." *Id.* The EPLI Application also contained a Fraud Statement reading as follows:

> The signer of this Application acknowledges that the information provided in this Application is material to the insurer's decision to provide the requested insurance and is relied on by the insurer providing such insurance. The signer of this Application represents that the information provided in this Application is true and correct in all matters . . . It is agreed that this Application shall be the basis of the contract should a policy be issued and it will be attached and become a part of the Policy.

*Id.* ¶ 43. Unified's General Manager signed the application. *Id.* ¶ 38; *see* [51-10] at 28.

EPLI Underwriter Meghan Bell and VP of Specialty Products and Programs Cooper Wallach underwrote Insureds' EPLI Application. DSAF ¶ 19; CCDSOF ¶ 32. Bell was the primary underwriter of the application, while Wallach reviewed the application and approved issues beyond Bell's authority. Resp. DSAF ¶¶ 20–21. Neither Bell nor Wallach requested copies of Insureds' biometric privacy law procedures and did not ask when Insureds implemented their biometric privacy law procedures. DSAF ¶ 40; CCDSOF ¶¶ 48, 50. Had he known at the time of underwriting that Insureds had potential liability under BIPA, Wallach would not have authorized issuance of the policy, or would, at minimum, have required materially different terms or pricing. Wallach Decl. ¶ 5.

In early 2021, Fortegra extended to "Bedford Transportation LLC/Unified CML LLC" an Employment-Related Practices Liability policy ("EPLI Policy"), applied to all "'Claims' arising out of 'Wrongful Employment Act[s]' and 'Third-Party

Wrongful Act[s]'" brought between February 15, 2021 and February 15, 2022, with no retroactive date limitation. *See* PSOF ¶ 55; [55-10] at 1; CCDSOF ¶¶ 8, 11. In other words, the EPLI Policy requires Fortegra to pay all losses arising from any claim first made against the insured entities during the policy period, including damages and the costs of defense. CCDSOF ¶¶ 13–14. The EPLI Policy states that "Claim(s) means:

> 1. A written or oral demand or notice for monetary, non-monetary or injunctive relief;
> 2. A civil, administrative or regulatory proceeding; or
> 3. An arbitration, mediation, or any other alternative dispute resolution proceeding seeking Loss to which the 'Insured' must submit or may submit with our prior consent, received by an Insured in which a 'Wrongful Act' is alleged. 'Claim(s)' include any appeal from the proceedings identified at b. and c. above,"

*id.* ¶ 15; DSAF ¶ 3, and that "All Claims arising out of [ i]nterrelated [w]rongful [a]cts, shall constitute one Claim" deemed to have been made on the date the first of such Claims was asserted against the Insured. DSAF ¶ 12; [51-10] at 10. The EPLI Policy defines "Wrongful Acts" as "any of the following:

> [E]mployment-related 'Discrimination', 'Harassment', 'Wrongful Termination', or 'Retaliation', defamation, denial of training/seniority, failure to enforce policies, failure to hire, failure to grant tenure, false imprisonment, invasion of privacy, libel/slander, malicious prosecution, misrepresentation, negligent evaluation, negligent hiring or supervision, promissory estoppels and intentional interference with contract, violations of the Uniformed Services Employment and Reemployment Rights Act, violations of the Family Medical Leave Act, wrongful demotion, wrongful discipline or wrongful deprivation of career opportunity."

CCDSOF ¶ 16. "Wrongful Acts" that "share a common nexus of fact, series of acts or are causally connected shall be deemed Interrelated 'Wrongful Acts'" and are "deemed to have first occurred on the date the first of such acts occurred." *Id.* ¶ 17.

The EPLI Policy does not apply to:

> Prior Notice Circumstances. Any 'Claim' arising out of incidents or circumstances of which any 'Insured' had knowledge of and which any 'Insured' could reasonably foresee might result in a 'Claim', or any asserted or pending 'Claim', prior to the Policy effective date shown in the Declarations.

[55-10] at 4.[5] Further, the EPLI Policy states that Fortegra has "no duty to provide coverage under this Policy unless there has been full compliance with all Conditions contained in this Policy," including that "'Insureds' represent[] the statements in the 'Application' are true, accurate and complete. The 'Insured(s)' further acknowledge[] that this Policy is issued by the Company in reliance upon such statement." PSOF ¶ 56; [55-10] at 9.

Fortegra renewed the EPLI Policy for an additional policy period effective February 15, 2022 through February 15, 2023. CCDSOF ¶ 10.[6]

---

[5] Fortegra disputes Insureds' characterization of this portion of the EPLI Policy as a "definition" of the term "Prior Notice Circumstances." Resp. DSAF ¶ 2.

[6] Insureds repeatedly refer to the "renewed" policy while citing to the original EPLI Policy. *See* DSAF ¶ 1; CCDSOF ¶¶ 8, 10; [57] at 3–4. This appears to be inadvertent. As Fortegra points out, the policy and coverage at issue in the instant dispute is the original EPLI Policy period, and Insureds attach and consistently cite the original, not the renewed, EPLI Policy. *See* [61] at 2–3; Resp. CCDSOF ¶ 10. The Court will treat all references to the "renewed" policy as a reference to the EPLI Policy.

## IV. Employee Lawsuits

On July 8, 2021, Unified received correspondence from an attorney representing former employee Bionka Lewis seeking a copy of her personal file and pay statements. DSAF ¶ 4; CCDSOF ¶ 18. This caused Insureds to believe that Lewis intended to sue Unified for alleged BIPA violations based on their use of the Kronos system. DSAF ¶ 5; CCDSOF ¶ 19. Insureds provided notice of this correspondence to Fortegra as a potential claim. DSAF ¶ 4; CCDSOF ¶ 19. On September 13, 2021, Fortegra issued a reservation of rights letter denying that the Lewis records request was a notice of a claim for the purposes of the EPLI Policy. DSAF ¶ 6; CCDSOF ¶¶ 20–21. On December 8, 2021, Lewis filed a BIPA suit against Unified in her individual capacity and on behalf of a class of similarly situated individuals. DSAF ¶ 7; CCDSOF ¶ 22; *Lewis v. Unified CML, LLC*, Case No. 2021 CH 612 (Ill. Cir. Ct. Cook County). Fortegra accepted that the Lewis litigation may constitute a claim potentially within EPLI Policy coverage, and undertook Insureds' defense subject to its reservation of rights. CCDSOF ¶ 23.

Between February 2022 and August 25, 2023, four additional former Bedford or Unified employees sued Insureds for alleged BIPA violations. DSAF ¶¶ 8–11; CCDSOF ¶¶ 24–31; *see Tullis v. Bedford Transp., LLC*, Case No. 2022 CH 1637 (Ill. Cir. Ct. Cook County); *Johnson v. Unified CML, LLC*, Case No. 2023 CH 7732 (Ill. Cir. Ct. Cook County); *Schaeffer P.C. et al v. Unified CML, LLC*, Case No. 2024 L 001347 (Ill. Cir. Ct. Cook County) (collectively, "Employee Lawsuits"). Fortegra agreed to treat the Employee Lawsuits as Interrelated Wrongful Acts constituting a

single claim, as defined in the EPLI Policy, and defend Insureds, subject to additional reservations of rights. *See* DSAF ¶ 12; Resp. CCDSOF ¶¶ 21–31.

In July 2024, Insureds, Fortegra, and the plaintiffs in the Employee Lawsuits engaged in mediation and efforts to resolve the lawsuits through settlement. CCDSOF ¶ 64. Ahead of the mediation, Insureds expressed to Fortegra that they did not want to discuss putative coverage issues in the mediation. *Id.* ¶ 65. Fortegra acknowledged this position, but nevertheless admits that it raised coverage issues during the mediation. Resp. CCDSOF ¶¶ 66–67. The mediation did not result in settlement. Resp. CCDSOF ¶ 68. However, multiple settlement demands were issued to Insureds in connection with the Employee Lawsuits, including a demand within the limits of the EPLI Policy in January 2025. CCDSOF ¶¶ 63, 71.

### V. Relevant Procedural History

Fortegra filed this lawsuit against Insureds Bedford and Unified, and nominal Defendants Bionka Lewis, Jonathan Tullis, Equarion Gills, and Diane Johnson on August 27, 2024 seeking recission of the EPLI Policy based on Insureds' material misrepresentations on the EPLI Application (Count I), or in the alternative, a declaratory judgment that Fortegra has no duty to defend or indemnify Insureds based on the prior knowledge and claim exclusion clauses (Count II) or breach of the representations and covenants condition of the EPLI Policy (Count III). [1]. Insureds responded to Fortegra's complaint with two counterclaims alleging breach of contract due to Fortegra's failure to settle the Employee Litigation within policy limits

(Counterclaim I) or bad faith (Counterclaim II). [15]. Fortegra and Insureds moved for summary judgment on all counts.

## ANALYSIS

In Illinois, the construction of an insurance policy is a question of law. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 342 (Ill. 2006); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). "[A]n insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006) (citation omitted). "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004) (citation omitted). "Although insurance policies are construed liberally in favor of coverage, this rule of construction comes into play only when the policy language is ambiguous." *Livorsi Marine*, 856 N.E.2d at 343.

### I. Recission is Warranted

The parties agree that Illinois substantive law governs this diversity case. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Under Section 154 of the Illinois Insurance Code, 215 ILCS 5/154 ("Section 154"), an insurance company may deny coverage because of a misrepresentation in an insurance application where the misrepresentation "materially affects either the acceptance of risk or the hazard assumed by the company." *Essex Ins. Co. v. Galilee Med. Ctr. SC*, 988 F. Supp. 2d 866, 871 (N.D. Ill. 2013) (quoting Section 154), *aff'd*, 815 F.3d 319 (7th Cir. 2016). In

other words, "Section 154 allows insurers to deny coverage and rescind a policy if (1) a statement in the policy application is false and (2) the false statement either was made with the intent to deceive the insurer or materially affects the acceptance of the risk assumed by the insurer." *Essex Ins. Co.*, 815 F.3d at 322 (7th Cir. 2016) (citing *Ill. State Bar Ass'n Mut. Ins. Co. v. Law Off. of Tuzzolino & Terpinas*, 27 N.E.3d 67, 71 (Ill. 2015)). The second prong is disjunctive, so "either an actual intent to deceive *or* a material misrepresentation which affects either the acceptance of the risk or the hazard to be assumed can defeat or avoid the policy." *Law Off. of Tuzzolino & Terpinas*, 27 N.E. 3d at 71 (emphasis in original); *Minn. Lawyers Mut. Ins. Co. v. Schulman*, 2016 WL 4988006, at *10 (N.D. Ill. Sept. 19, 2016) (same). Fortegra pursues the latter theory, arguing that Insureds made material misrepresentations in the EPLI Application.[7]

Recission is a "complete defense to an action on the policy." *Royal Maccabees Life Ins. Co. v. Malachinski*, 161 F. Supp. 2d 847, 853 (N.D. Ill. 2001) (citation omitted). Once rescinded, "the rights of the parties under that contract are vitiated or invalidated." *Ill. State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 821 N.E.2d 706, 713 (Ill. App. 1st 2004) (citation omitted). Because recission of an insurance policy necessarily defeats actions brought under that policy, the Court begins with the

---

[7] Insureds argue that Fortegra has failed to prove that they intended to deceive Fortegra. [50] at 8. But Fortegra's claims rest on the material misrepresentation theory under Section 154, not the intent to deceive theory. *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1015 (Ill. 2003); [56] at 6 n.4.

parties' motions regarding Count I. *Call One Inc. v. Berkley Ins. Co.*, 2025 WL 2802071, at *6 (N.D. Ill. Sept. 30, 2025).

**A. Misrepresentations**

"Before a court may determine if a misrepresentation was made with actual intent to deceive or was material, the court must find that a misrepresentation was made." *Minn. Lawyers Mut. Ins. Co.*, 2016 WL 4988006, at *10 (quoting *Methodist Med. Ctr. of Ill. v. Am. Med. Sec. Inc.*, 38 F.3d 316, 319 (7th Cir. 1994)). A misrepresentation in an insurance application is a statement of something as a fact which is untrue and affects the risk undertaken by the insurer. *E.g.*, *Ratcliffe v. Int'l Surplus Lines Ins. Co.*, 550 N.E.2d 1052, 1057 (Ill. App. 1st 1990) (citation omitted); *Methodist Med. Ctr.*, 38 F.3d at 319–20 (citation omitted). "Whether a misrepresentation occurred is determined objectively, on the basis of the facts known to the insured at the time of the application, regardless of the insured's subjective belief as to the truth of the representations." *W. World Ins. Co. v. Majercak*, 490 F. Supp. 2d 937, 941 (N.D. Ill. 2007); *Essex Ins. Co.*, 815 F.3d at 323 ("[U]nder § 154, a misrepresentation, even if innocently made, can serve as the basis to void a policy.") (quoting *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1015 (Ill. 2003)); *Ratcliffe*, 550 N.E.2d at 1057.

Fortegra argues that Insureds made the following material misrepresentations when completing the EPLI Application: (1) Insureds' answer of "yes" when asked whether they had "procedures in place to deal with biometric privacy laws" (Question 8); and (2) Insureds' answer of "no" when asked if they were "aware of any fact,

circumstance, or situation which may result in an employment claim . . . against any entity proposed for insurance or any of its Directors, Officers, Members (if LLC), or employees." (Question B). Insureds respond that the EPLI Application did not include any misrepresentations because both Unified CML LLC and Bedford Transportation LLC possessed written BIPA policies, and they were unaware of a formal Claim as defined in the EPLI Policy at the time they completed the EPLI Application. The Court addresses each alleged misrepresentation in turn.

**i. Unified CML LLC's Possession of a BIPA Policy is a Disputed Fact.**

Fortegra argues that Insureds' EPLI Application materially misrepresented whether they possessed BIPA policies at the time of the EPLI Application because Unified CML LLC, one of the entities that signed the application, does not possess, and has never possessed, such a policy. Insureds counter that Unified CML *Operations* LLC, the entity forming the labor portion of Insureds' business, *does* possess a BIPA policy, and that Unified CML LLC merely owns the building and does not have any employees who could fall under such a policy. DSAF ¶ 13. Despite the cross-moving parties' repeated boilerplate assertions that the status of Unified CML LLC's BIPA policy is undisputed, and thus ripe for summary judgment, the facts indicate otherwise.

Fortegra repeatedly asserts that Unified CML LLC did not possess a BIPA policy at the time of the application, pointing to the fact such a policy has not been produced in the instant case, and to testimony by Defendants' corporate

representative that she did not know whether Unified CML LLC had a written BIPA policy and did not undertake any investigation to identify whether any written BIPA policy was implemented on behalf of Unified CML LLC. PSOF ¶¶ 32, 36; [53] at 11. There are several pieces of evidence to the contrary, including an email from Miller attaching a BIPA policy and stating that Unified CML LLC "started using" such a policy in March 2020, a year before they submitted the EPLI Application, Resp. PSOF ¶ 35,[8] and testimony by Insureds' corporate representative that when Insureds' attorney recommended that that they implement a BIPA policy, they followed their attorney's advice. Resp. DSAF ¶ 14; [51-3] at 48:12–49:5; [51-5] at 55:20–22.

A material factual dispute remains with respect to Question 8, so the Court does not award summary judgment based on Insureds' answer to this question. *Celotex*, 477 U.S. at 322.

#### ii. Insureds Were Aware of a Fact, Circumstance, or Situation Which May Result in an Employment Claim.

Notwithstanding the fact dispute with respect to Unified CML LLC's BIPA policy, there is no such dispute when it comes to Insureds' response to Question B.

[8] Fortegra notes in passing and without authority that this email is self-serving hearsay, [61] at 3, but Fortegra raised this email in support of its motion. PSOF ¶ 35; Resp. CCDSOF ¶ 37; CCPSAF ¶ 10. Elsewhere, Fortegra contests the use of this email because Fortegra was unable to depose Miller over Insureds' privilege objections, but Fortegra never moved to compel on this point. Resp. CCDSOF ¶ 37 n.1. This is a legal argument improperly included in Fortegra's Rule 56.1 response, and is not repeated in Fortegra's papers, so the Court will give it no mind. Given that Fortegra introduced this evidence, and Insureds admitted that Miller sent this email, Resp. PSOF ¶ 35, the Court will consider this fact as undisputed with respect to Fortegra's motion. Regardless, as noted above, there is other evidence that Unified CML LLC may have possessed a BIPA policy at the time of the EPLI Application, so the Miller email is not the sole evidence informing the Court's conclusion that there is a factual dispute with respect to Question 8.

Fortegra points to several pieces of evidence which, viewed together, indicate that at the time of the EPLI Application, Insureds should have disclosed potential BIPA liability resulting from their use of the Kronos software—(1) the 2019 Kronos Agreement; (2) the February 2020 Kronos Customer Alert raising the possibility of BIPA liability stemming from its software; and (3) the April 2019 "Yikes" and "Minefield" email exchange between Unified's General Manager and its outside counsel.

Insureds argue that none of this evidence is relevant and did not cause Insureds to become aware of any potential BIPA claims. [57] at 11–13. Insureds are right with respect to the Kronos Agreement, which Fortegra implies, but never outright argues, served as a notice to its customers that the Kronos software may implicate privacy laws. *See id.* at 12. Without more, this cannot serve as a basis to rescind the EPLI Policy. The same goes for the Kronos Customer Alert, which Fortegra argues Insureds received based on a foundationless spreadsheet seemingly indicating that the Alert was sent to Kronos's point of contact at the company, an individual whom Insureds argue was no longer employed at the time the policies were purchased. *Id.* at 11; *see* DSAF ¶ 17. Neither side provides a factual basis to determine whether the email account was or was not monitored, or a sound basis to resolve the legal effect this may have, *i.e.*, whether Insureds constructively received the Alert notwithstanding they did not monitor the account. Resolving these questions is not necessary, however, given that the April 2019 "Yikes" and "Minefield" email exchanges are sufficient on their own to demonstrate that, viewed in the light most

favorable to the Insureds, Insureds were aware of potential BIPA liability at the time they completed the EPLI Application. Insureds argue that they were not aware of potential BIPA liability at the time because they had "never received a complaint or Claim in the seven years they had used a biometric time clock," [60] at 3; their attorney did not make them concerned that they had exposure to biometric lawsuits, DSAF ¶¶ 15–16; [50] at 1; and at the time it was unclear whether BIPA claims were subject to a one-year statute of limitations. [57] at 8 (citing *Times v. Black Horse Carriers, Inc.*, 216 N.E.3d 845, 854 (Ill. 2023)). Each argument falters, as Insureds' subjective beliefs and beliefs concerning "the time-barred nature of any [possible] claim" does not impact the Court's analysis. *Schulman*, 2016 WL 4988006, at *11. Based on an objective reading of the emails, Insureds had all the information they needed to be aware of potential BIPA claims as a matter of law: there was a five-year gap between Insureds' adoption of the Kronos software and when Insureds implemented their BIPA policies (assuming, arguendo, that Unified CML LLC implemented a BIPA policy). That Insureds' counsel's warning did not subjectively cause Insureds to be concerned about potential lawsuits does not alter the analysis. *See Majercak*, 490 F. Supp. 2d at 942.

Insureds spend considerable time on their Hail Mary argument that even if they first became aware of BIPA and its requirements in April 2019, *see* Resp. PSOF ¶ 28, they did not become aware of a formal "Claim" as defined in the EPLI Policy until they received notice of the Lewis litigation in July 2021. DSAF ¶ 27; [57] at 5–

10; [50] at 9–10.[9] Insureds' argument and the insurance policy at issue are remarkably similar to *Call One Inc. v. Berkley Insurance Company*, 2025 WL 2802071 (N.D. Ill. Sept. 30, 2025). There, an insurance company sought to rescind a policy based on material misrepresentations made in the policy application. *Id.* at *8. In the policy application, the insured had indicated it was not "aware of any fact, circumstance or situation involving any Insureds that might reasonably be expected to result in a Claim," despite ongoing tax remittance issues and an audit. *Id.* at *7–8. The company argued that the application did not contain a misrepresentation because it only sought information related to formal Claims (defined functionally identically as in the EPLI Policy), and neither the tax issues nor audit amounted to a Claim under that definition. *Id.*; *see* DSAF ¶ 3; CCDSOF ¶ 15. In ruling that insureds had made a misrepresentation on the policy application, the court found that the application question regarding knowledge of prior claims was informed by the surrounding text. *Call One Inc.*, 2025 WL 2802071, at *8. So too here.[10] The EPLI

[9] Insureds also argue that they did not have any "Prior Knowledge" as defined in the EPLI Policy. [57] at 5. But this argument is applicable to Count II (based in the EPLI Policy's prior knowledge and claim exclusion provisions), not Count I. As discussed *supra*, Fortegra's position that the initial correspondence from Lewis's attorney did not amount to a "Claim" under the EPLI Policy is inapposite to the Court's interpretation of the EPLI Application for the same reason. *See* DSAF ¶ 6; CCDSOF ¶¶ 20–21; [50] at 10.

[10] Insureds do not attempt to counter the parallels between *Call One* and the instant case. Instead, they attempt to distinguish *Ratcliffe v. International Surplus Lines Insurance Company*, 550 N.E.2d 1052 (Ill. 1990), and *Campbell v. Prudential Insurance Company of America*, 155 N.E.2d 9 (Ill. 1958), leading cases regarding disposition of Section 154 claims. *See* [60] at 6–7; [57] at 10–11. Insureds miss the mark. Fortegra relies on these cases for their framing of the standard under Section 154 and draws no factual parallels to further its recission arguments. While the insured in *Ratcliffe* was aware of several active disputes amounting to a potential "claim" under the policy at issue, that does not

Application did not ask Insureds if they were aware of any formal "Claims" as defined in the policy, it asked if Insureds were "aware of any *fact, circumstance, or situation which may result* in an employment claim . . . ." PSOF ¶ 42 (emphasis added).[11] Courts "presume that each contractual provision was inserted deliberately and for a purpose consistent with the parties' intent." *Sav. Bank v. Autoworks of Wauconda, Inc.*, 924 N.E.2d 1197, 1205 (Ill. App. 2010) (citation omitted). The Court cannot ignore the text of the question asked. The inclusion of the modifying phrase "fact, circumstance, or situation which may result in an employment claim" forecloses Insureds' narrow interpretation of Question B. Insureds' response to Question B contained a misrepresentation under Section 154.

foreclose the result here. As in the instant case, the *Ratcliffe* court dealt with an insurance application which asked the applicants whether they were aware of "any circumstances which might give rise to a claim." 550 N.E.2d at 1055. As is the case here, no formal claims had been filed, and the court found the insureds' failure to report the circumstances which could eventually rise to a formal claim amounted to a misrepresentation on the policy application. *Id.* at 1058 (noting that outside counsel was aware that litigation could result in claims against the insureds).

Insureds argue that Fortegra's citation to *Campbell* is misplaced because there the evidence established that Campbell had made misrepresentations regarding his medical history when completing a health insurance application, whereas the Insureds in the instant case did not make any misrepresentations. *See* [57] at 10–11 (citing 155 N.E.2d at 11); [60] at 7. But Fortegra cites *Campbell* for the definition of materiality, and attempts to draw no factual comparisons between *Campbell* and Insureds' conduct here. [53] at 10.

[11] In *Call One*, "Claim" was defined in a preexisting policy, and the misrepresentation at issue was located in a subsequent policy renewal. *Call One Inc.*, 2025 WL 2802071, at *8. The basis for finding a misrepresentation is even stronger here, where Fortegra's claim does not involve a policy renewal, but the initial application materials. It would defy logic to incorporate by reference the definition of Claim used in the EPLI Policy to an application submitted before the policy was issued, as Insureds would have the Court do.

**B. Materiality**

Whether Insureds' misrepresentation regarding potential claims is material is another question.[12] The Court finds that there is no dispute of material fact that Insureds' misrepresentation of Question B is material. Misrepresentations on an insurance application are material if "reasonably careful and intelligent persons would have regarded the facts stated [or omitted] as substantially increasing the chances of the events insured against, so as to cause a rejection of the application," or "at the very least, reconsider its premiums." *Meier v. Pac. Life Ins. Co.*, 63 F.4th 595, 600 (7th Cir. 2023) (citations omitted). Said differently, Insureds' misstatement is material if the information withheld prevented the insurer from appraising its risk on the basis of the facts as they existed at the time of the application. *Campbell v. Prudential Ins. Co. of Am.*, 155 N.E.2d 9, 11 (Ill. 1958). For an insurer, potential claims and risk are generally intertwined. *See Uhlich Child.'s Advantage Network v. Nat'l Union Fire Co. of Pittsburgh, Pa.*, 929 N.E.2d 531, 537 (Ill. App. 1st 2010) ("The purpose of a claims-made policy is to allow the insurance company to easily identify risks, allowing it to know in advance the extent of its claims exposure and compute its premiums with greater certainty."). Like the Court's analysis of misrepresentation, Illinois courts apply an objective standard to assess materiality. *Essex Ins. Co.*, 815 F.3d at 324 (citing *Small v. Prudential Life Ins. Co.*, 617 N.E.2d

[12] Given the disputed facts surrounding Question 8, and because Fortegra's claim with respect to Question B is sufficient on its own to grant summary judgment, the Court does not reach the materiality of the alleged misrepresentation regarding Unified CML LLC's BIPA policy.

80, 83 (Ill. App. 1st 1993)). Testimony from an insurer's underwriter may be used to establish the materiality of omitted information. *Methodist Med. Ctr.*, 38 F.3d at 320; *Essex Ins. Co.*, 815 F.3d at 324. "[W]hile the materiality of a misrepresentation is ordinarily a question of fact, summary judgment is appropriate where the misrepresentation is of such a nature that no one would dispute its materiality." *Call One Inc.*, 2025 WL 2802071, at *10 (citation omitted); *Ratcliffe*, 550 N.E.2d at 1058.

Fortegra argues Insureds' misstatement regarding potential claims was material based on the testimony and affidavit of its underwriters that they relied on the accuracy of the EPLI Application in underwriting the EPLI Policy, and that had they been aware of Insureds' potential BIPA liability, they would not have approved the policy, or at the very least would have included different terms.[13] Insureds counter that notwithstanding this testimony, this misstatement was not material based on the underwriters' deposition testimony that they did not ask for additional information or materials beyond the signed application. [50] at 9.

Insureds ignore the underwriters' testimony that knowledge of facts which may give rise to a BIPA claim is material to any reasonable underwriter, and that if they had been aware that one or more of the insureds under the policy did not have a BIPA policy in place for many years prior to the application, they would have likely declined, included a retro date inception in the policy (meaning that no claims which

[13] For the reasons already stated, the Court overrules Insureds' objections to the Wallach Declaration.

accrued before the policy date would be covered), or would have increased the retention or deductible. PSOF ¶¶ 46–47, 53.[14] Based on this testimony, a reasonable jury could only find that Insureds' misrepresentation is material as a matter of law. *Schulman*, 2016 WL 4988006, at *12; *Meier*, 63 F.4th at 600 (if a reasonably careful and intelligent person learned this information, that person would, "at the very least, reconsider its premiums"); *cf. Call One Inc.*, 2025 WL 2802071, at *10 (underwriter testimony that they would have either rejected the insurance application or issued it for a higher premium had they been aware of the omission or misrepresentation would support materiality determination). The Court is sympathetic to Insureds' argument that the underwriters did not ask for a copy of Insureds' BIPA policies, as requesting the policies at the time could have avoided the time and resources spent on this case, *see* Resp. PSOF ¶ 46; [50] at 9, but the underwriters are entitled to rely on the truthfulness of the application materials. *Brandt v. Time Ins. Co.*, 704 N.E.2d 843, 846–47 (Ill. App. 1st 1998) ("Illinois law imposes no duty on an insurer to conduct an independent investigation of insurability before issuing an insurance policy."). The failure of Fortegra's underwriters to request further information "does not undercut the materiality of the omission." *Call One Inc.*, 2025 WL 2802071, at *11.

To summarize, after drawing all reasonable inferences in Insureds' favor, the undisputed facts show that they made a material misrepresentation in their response

---

[14] Insureds ignore the fact that the EPLI Application contained a notice that Fortegra would rely on the answers provided by the applicants when issuing the policy. PSOF ¶ 43. While a policy application's materiality provision is not dispositive on its own, when coupled with other evidence, it can substantiate a finding of materiality. *Call One Inc.*, 2025 WL 2802071, at *10 (collecting cases).

to Question B. Because this material misrepresentation is a sufficient basis to rescind the EPLI Policy pursuant to Section 154, Fortegra is entitled to summary judgment with respect to Count I. Given this disposition, the Court denies as moot Fortegra's motion for summary judgment as to Counts II and III, both of which seek the same relief as Count I—specifically, a declaration of non-coverage under the EPLI Policy. *See Schulman*, 2016 WL 4988006, at *12; *see also New England Mut. Life Ins. Co. v. Bank of Ill. in DuPage*, 994 F. Supp. 970, 982 n.7 (N.D. Ill. 1998) (declining to reach insurance company's alternative arguments due to award of summary judgment on recission claim). Insureds' cross-motion for summary judgment on Counts I through III is denied.

## II. Insureds' Counterclaims

Recission is a complete defense to an action for breach of an insurance policy. *Coregis Ins. Co.*, 821 N.E.2d at 713 ("Where a contract is rescinded, the rights of the parties under that contract are vitiated or invalidated."). Therefore, the Court need not reach the merits of Insureds' breach of contract counterclaim or its claim that Fortegra behaved unreasonably and vexatiously with respect to the Employee Lawsuits. *Id.* Insureds' motion for summary judgment on its counterclaims must be denied; Fortegra's motion for summary judgment on these counterclaims is denied as moot.

## CONCLUSION

For the stated reasons, Fortegra's motion for summary judgment [48] is granted in part and denied in part. Fortegra's motion with respect to Count I is

granted. Fortegra's motion on Counts II and III and Insureds' counterclaims is denied as moot. Insureds' motion for summary judgment [47] is denied on all counts. The Clerk is directed to enter judgment in Plaintiff's favor and against Unified CML LLC and Bedford Transportation LLC and terminate the case.

E N T E R:

Dated: September 21, 2026

MARY M. ROWLAND
United States District Judge